647 So.2d 453 (1994)
STATE of Louisiana, Appellee,
v.
Ezard HALL, Appellant.
No. 26505-KA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
*454 Peggy J. Sullivan, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Jerry L. Jones, Dist. Atty., H. Stephens Winters, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
SEXTON, Judge.
Defendant was charged by bill of information with one count of simple burglary. A *455 jury found him guilty as charged, and the trial court imposed a five-year sentence. Raising several assignments of error, defendant appeals both his conviction and sentence. We affirm.
On June 7, 1993, at approximately 2:22 a.m., Monroe City Police Officers Moore and Gayden responded to a silent alarm at "3-D Transport" in Monroe. Moore went toward the front door of the building and saw a black male, identified as the defendant, exit the building and begin to run away. The officers apprehended defendant several blocks away after a foot chase. The crime scene showed that a chain used to secure the front door had been cut. File drawers had been opened, objects had been placed on the floor, and the coke machine had been damaged.
Defendant was charged with simple burglary and was convicted by a jury of the charge. The trial court sentenced the defendant to five years, which is within the range recommended by the sentencing guidelines. Defendant appeals his conviction and sentence, raising the following assignments of error:
(1) There was insufficient evidence to convict the defendant of the crime of simple burglary.
(2) The trial judge erred in refusing to include the offense of criminal trespass as a responsive verdict.
(3) The trial judge erred in defining and explaining "reasonable doubt" in his instructions to the jury.
(4) The trial judge erred in imposing an excessive sentence.

SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, defendant contends there was insufficient evidence for a conviction of the crime of simple burglary. "Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein...." LSA-R.S. 14:62. Defendant argues that there was insufficient evidence to show an intent to commit a felony or theft while present at 3-D Transport, and that the evidence did not exclude the "reasonable" hypothesis that he entered the building innocently through an already open door to obtain a drink from the coke machine or to look for someone he knew who worked there.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Although LSA-R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded, this statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review. Rather, all the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. McKnight, 539 So.2d 952, 957 (La.App. 2d Cir.1989), writ denied, 548 So.2d 322 (La. 1989).
Though intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. State v. *456 Kahey, 436 So.2d 475 (La.1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982); State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988). It is not necessary that an actual theft occur. State v. Burns, 471 So.2d 949 (La.App. 2d Cir.1985).
Officer Dewayne Moore testified that he and Officer Gayden heard a VARDA alarm on their squad car radio at about 2:22 a.m. on June 7, 1993. The alarm came from 3-D Transport in Monroe. The VARDA alarm is "silent" in that no alarm sounds at the premises being monitored. The officers arrived at the scene seconds later and pulled into the lighted parking lot. The entrance to the building consists of a sliding door secured by a chain and a lock. Moore saw a man look out the door at the police car and then run away. Moore gave chase while talking to Gayden on a walkie-talkie. Moore kept the suspect in sight until Gayden apprehended him. Moore identified defendant as the person apprehended.
Moore said entry into the building was achieved by cutting the chain on the front door. Drawers from the file cabinets had been pulled out and items had been taken from the drawers and placed on the floor. There were two sensors to the VARDA alarm: one was under a mat in the office and the second was near a coke machine in the rear of the building. Moore did not find any bolt cutters inside the business or in defendant's possession, and he did not see defendant throw anything while he was trying to run away.
Officer Isaac Gayden testified that the VARDA alarm was triggered automatically and was broadcast over the police radio. He identified defendant as the person he apprehended. Gayden said he yelled at defendant to stop twice during the foot pursuit. The defendant looked back both times, but kept on running.
Monroe Police Detective Ron Schleuter testified at length describing how the VARDA alarm system works. The alarm is activated by pressure on a switch hidden in a mat or by breaking the field on a motion detector and transmits a signal over the police radio identifying the location of the alarm system. It can be inferred from this testimony and from Moore's statement that he arrived within seconds of hearing the alarm and that the activation of the alarm means that only seconds transpired between the time when defendant triggered the alarm and when Moore arrived at the scene. Due to the short amount of time involved, even if defendant did not trigger the alarm, he must have been with someone else who did. In which case, he is still a principal. LSA-R.S. 14:24.
Brenda Murphy is the owner and manager of 3-D Transport, Inc. She testified that she secured the doors with a lock and chain. She said the coke machine at the back of the building looked like someone had tried to pry underneath its top. She had not given anyone permission to enter the building on June 7, 1993. She secured the building with the chain and lock on a daily basis. In addition to the evidence of prying on the coke machine, she noticed file cabinets had been opened. This was unusual because the file cabinets were always kept shut. She said that her business worked on trucks, but only during the daytime. None of her employees had access to the building when she was not there. Ms. Murphy testified that she was the only person who had a key to the lock, and she was the person who secured the building before June 7. Ms. Moore had shut down the business for a few days due to the death of her mechanic. Hence, it was "possible" that someone could have cut the chain prior to this burglary. However, even if the chain had been cut earlier by someone else, the other facts indicate the defendant made an unauthorized entry and attempted a theft while therein. Nothing was missing from the building.
Ms. Murphy's testimony that she secured the building and did not authorize anyone to enter, combined with Moore's testimony that he saw defendant run out the door, is direct evidence of unauthorized entry and of the identity of the defendant as the person who was in the building without authority.
The coke machine apparently held change, and the building had moveable property in *457 the file drawers. The coke machine showed evidence of attempted entry, and the drawers had been rifled. Defendant entered the building under cover of darkness and fled when the police car arrived. All of this creates a strong inference that his intent was to commit a theft in the building.
Defendant's argument that he may have entered to seek a friend who worked there is implausible, inasmuch as the shop did not conduct business at night, especially at 2:22 a.m. Equally implausible is defendant's argument that he may have innocently entered to get a cold drink. Neither argument presents a sufficiently reasonable hypothesis of innocence, considering the fact that the building was closed for the night, no one else was present, and in view of defendant's flight from the police.
We conclude the trier of fact could readily have found the essential elements of the offense. The assignment of error lacks merit.

RESPONSIVE VERDICT
Defendant contends that the trial judge erred in refusing to include the offense of criminal trespass as a responsive verdict. The trial judge instructed the jury about the elements of criminal trespass, as requested in the motion, but did not instruct the jury that if it found defendant had committed criminal trespass they should acquit him. The judge did instruct that if the jury had any reasonable doubts as to guilt they should acquit. In his per curiam, the judge stated that he charged the jury with the definition of criminal trespass, and he allowed the attorneys to argue that if the jury felt defendant was guilty of a criminal trespass, then he was not guilty of the offense charged.
LSA-C.Cr.P. Art. 814(A)(44) lists the legislatively approved responsive verdicts to simple burglary. Criminal trespass is not included.
At least two Louisiana appellate courts have held that criminal trespass is not a responsive verdict to a charge of simple burglary: State v. Major, 597 So.2d 108 (La. App. 4th Cir.1992), and State v. Merrell, 442 So.2d 713 (La.App. 1st Cir.1983). Major relied on the reasoning of State v. Jones, 426 So.2d 1323 (La.1983), which held that responsive verdicts are limited to those listed in Article 814. The Jones court reasoned that the redactors of Article 814 apparently concluded that criminal trespass was not closely enough associated with simple burglary to be a lesser and included offense since the trespass offense did not involve an intent to commit an offense in the structure entered and since trespass was not limited to the entering of structures.
Defendant argues that he is denied equal protection of the law in that criminal trespass was held to be a lesser and included offense of simple burglary of a pharmacy under LSA-C.Cr.P. Art. 815 in State v. Simmons, 422 So.2d 138 (La.1982). Defendant argues that since the offense of simple burglary of a pharmacy has essentially the same elements as simple burglary, he is denied equal protection of the law by not having criminal trespass as a responsive verdict to simple burglary as it was in the Simmons case.
Although defendant's argument is interesting, it is not persuasive. As the court in Simmons noted, the charged offense in that case is not one of those crimes listed at LSA-C.Cr.P. Art. 814 as to which there are statutorily listed responsive verdicts. The court, therefore, applied the general responsive verdict statute, Article 815.
Article 815 only applies to crimes not listed in Article 814. State v. Merrell, 442 So.2d 713 (La.App. 1st Cir.1983). Since Article 814 lists the responsive verdicts to simply burglary, defendant is not entitled to an instruction that some other crime also is responsive. We also note that the jury failed to return the responsive verdict of guilty to "Unauthorized Entry of a Place of Business." The trial court may exclude one of the responsive verdicts listed in Article 814, but it cannot add to their number. State v. Square, 433 So.2d 104 (La.1983).
Accordingly, this assignment of error is without merit.

REASONABLE DOUBT INSTRUCTION
Defendant contends that the trial court erred in defining and explaining reasonable *458 doubt. Defendant claims he objected to the court's definition of reasonable doubt. However, he failed to designate that portion of the transcript relative to that objection so he has not preserved proof of the objection. State v. Mims, 524 So.2d 526 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267 (La.1988).
Nevertheless, to avoid the issue arising in post-conviction proceedings, we will address the merits of the claim.
The instruction complained of was that a reasonable doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis and not upon a mere caprice, fancy, or conjecture. It is not a doubt concocted in your mind out of a feeling of sympathy for the accused or borne out of a merciful inclination to permit the accused to escape the just penalty of the law.
Defendant contends that this instruction was not clear and would have led the jury to apply an incorrect standard of law. He does not assert what was unclear, nor does he contend what the correct standard should have been.
The language used in an instruction must be viewed in its overall context. Relief cannot be based on an isolated sentence. Rather, the particular language will be considered with other language in the jury charge to determine if it is erroneous and prejudicial. State v. Womack, 592 So.2d 872 (La.App. 2d Cir.1991), writ denied, 600 So.2d 675 (La.1992).
In State v. Taylor, 410 So.2d 224, 225 (La.1982), the court approved an instruction which defined reasonable doubt as "a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture." This court approved the same instruction in State v. Evans, 627 So.2d 664 (La.App. 2d Cir. 1993).
Here, the charge on reasonable doubt, when considered in its entirety, was neither erroneous nor prejudicial. The defendant's contention here lacks merit.

THE SENTENCE
In defendant's fourth assignment of error, he alleges that the trial judge erred in imposing an excessive sentence.
Defendant's argument cites cases rendered before the sentencing guidelines went into effect. He also contends that the court should have given more weight to mitigating circumstances of no loss to the victim and no significant premeditation on defendant's part.
While a judge must consider the guidelines, he has complete discretion to reject them and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of conviction (0-12 years here), so long as the judge states for the record the considerations taken into account and the factual basis for his imposition of the sentence. Where the trial judge has considered the guidelines and adequately stated the considerations taken into account and the factual basis for the imposition of sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237.
Here, the trial judge found that the sentencing guidelines grid cell recommended a sentence between 54 and 72 months. The judge noted from the presentence investigation report that defendant had no juvenile record. He had several misdemeanor offenses. This was his second felony of a related nature, i.e., he had pled guilty to attempted simple burglary in 1988. The probationary sentence imposed was revoked. The court noted as mitigating circumstances that defendant had a limited education, was raised without a father image, and had a medical discharge from the military. Defendant was 38 years old, so he was not a youthful offender, and he displayed a poor work record. The court then imposed a sentence of five years.
This 60-month sentence is in the mid-range of the guidelines recommendation. A sentence selected from within the range suggested by the designated sentencing guidelines grid cell is appropriate for an offender with that criminal history and is not excessive under the Louisiana Constitution. *459 State v. Essex, 618 So.2d 574 (La.App. 2d Cir.1993); La.S.G. § 201(C).
Accordingly, the assigned error is without merit.
Finally, we note that when the trial judge imposed sentence, he told defendant he had three years "from this date" to file for post-conviction relief. This is a common error. LSA-C.Cr.P. Art. 930.8 provides that the three-year prescriptive period commences when the judgment of conviction and sentence becomes final. The purpose of Article 930.8(C) is to inform the defendant of the prescriptive period in advance. Thus, it is error to say "from this date." This defect has no bearing on the sentence and is not grounds for reversal. State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992).
We direct the trial court to send appropriate written notice of the provisions of Article 930.8 to defendant within ten (10) days of the rendition of this opinion and to file written proof that defendant received notice in the record of the proceedings. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992).
The conviction and sentence of the defendant are affirmed.
AFFIRMED.