756 So.2d 1264 (2000)
STATE of Louisiana, Appellee,
v.
Marcus DEMEASE, Appellant.
No. 33,047-KA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
*1265 Amy C. Ellender, Louisiana Appellate Project, Steven R. Thomas, Mansfield, Counsel for Appellant.
Richard Ieyoub, Attorney General, William R. Jones, District Attorney, B. Kevin Holland, Assistant District Attorney, Counsel for Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
GASKINS, J.
Following a jury trial, the defendant, Marcus Demease, was convicted of armed robbery, in violation of La. R.S. 14:64. Subsequently, he was adjudicated a second felony offender, and a sentence of 25 years at hard labor without benefit of probation, parole or suspension of sentence was imposed. The defendant's timely motion to reconsider sentence was denied. The defendant appealed. We affirm the defendant's conviction and sentence.

FACTS
On July 19, 1997, the defendant and Kory McCray were involved in the armed robbery of the Kajun Seafood restaurant in Coushatta, Louisiana. At about 8:00 p.m., Thanh Du, his wife Marie, and their daughter Hahn were working in the restaurant. Mr. Du was standing at the window in the front of the restaurant when McCray, a regular customer, came in with a gun and demanded money. Although McCray's face was covered with a "towel," it momentarily fell away, allowing Mr. Du to positively identify him later as the gunman. McCray heard Mr. Du's wife making noise in the kitchen and ordered her to move, demanding money.
Hahn Du heard the commotion and quickly came to the front of the restaurant to see McCray, his face covered with a bandana, holding a gun and demanding money from her scared, screaming parents. She recognized McCray even with his face covered because of his build, coloring and eyes. McCray ordered her to sit down and threatened to shoot her; she knelt down on the floor. McCray demanded more money than he found in the front register and began shooting the gun.[1] Hahn screamed, and McCray ordered her to "shut up." Hahn saw her mother direct McCray to the back of the restaurant where there was more money. McCray went to the back, took the money and ran out of the front of the restaurant, taking *1266 a cash register and cash drawer.[2] Mr. Du initially followed the robber out of the restaurant but did not give chase.
James Troquille, owner of a nearby convenience store, heard a loud bang. Investigating, he saw a man holding a pistol in the face of one of the restaurant workers. Troquille went back into his store and got his pistol. Initially, he squatted down beside a coke machine and waited for the gunman to come out of the restaurant. A customer, not realizing the situation, relieved Troquille of the pistol. Consequently, Troquille returned to his store, obtained his SKS Chinese assault rifle, and then ran back toward the restaurant.
Troquille saw Mr. Du out on the road pointing up the hill on Oak Street, also known as "the Alley." Troquille immediately gave chase. As he ran after the gunman, Troquille thought he was about to catch up with him. However, he momentarily lost sight of the gunman when the man rounded a street corner. As Troquille rounded the corner himself, he saw a white car approximately 50 feet from him, but he did not see the fleeing gunman. Troquille recalled seeing, out of the corner of his eye, a foot and the back door closing on the driver's side of the white car just before the vehicle drove off. He could not see inside the vehicle.
Johnny Ray Lewis was a lifelong acquaintance of the defendant. On the day of the robbery, he encountered the defendant in the late morning or early afternoon. They went back to Lewis' house, where they were "playing, talking chatchatting." Late in the evening, they were still at Lewis' house when they were invited to attend a fish fry. However, McCray drove up in a small white car. The defendant had a private conversation with McCray wherein they whispered with each other. Then the defendant got into the white car and left with McCray; they were the only two persons in the car. Lewis eventually went to the fish fry. About an hour after his arrival there, he was outside playing dominos when he saw the same white car pass by, going "very fast."
A photographic line-up was shown to the victims of the armed robbery. All three members of the Du family identified McCray as the gunman in the armed robbery. Further investigation revealed that the white getaway car seen in the alley belonged to McCray's girl friend. It was located in the parking lot of her Natchitoches apartment complex in the early morning hours following the robbery. Additionally, a cash register (and/or a cash register drawer) and clothing fitting the description of that worn by the robber were found in close proximity to one another on Red Oak Road, also known as Highway 480.
Investigators quickly developed the defendant as an additional suspect; however, they were unable to locate him or McCray. Learning that the defendant had a brother in St. Louis, Missouri, the authorities obtained warrants for flight from prosecution for the defendant and McCray. In late August 1997, the defendant and McCray were arrested in St. Louis.
FBI Special Agent Kevin Darrah, who executed the fugitive warrant on the defendant, questioned him following his arrest. The defendant gave a statement in which he claimed that on the night of the robbery, he and McCray were driving in McCray's girl friend's car down the alley behind the restaurant when they saw two men exit the restaurant; he knew one man as "Chunkie" but did not know the other. Chunkie was carrying a cash register, and another man was running after these two *1267 men with a shotgun. The defendant stated that they stopped the car and let the two fleeing men get in the car with the cash register. In exchange for transporting the men out of the area, they were paid $800. The defendant denied any prior knowledge of the armed robbery.
After a jury trial, the defendant was convicted of armed robbery. He was subsequently charged as a second felony habitual offender. The defendant filed a motion to quash his previous conviction. At the hearing on the habitual offender charge, the state submitted proof that the defendant pled guilty to obscenity in May 1993 and was convicted of armed robbery within ten years of his discharge on the obscenity conviction. The trial court denied the defendant's motion to quash and adjudicated the defendant to be a habitual offender. However, the trial court exercised its discretion under State v. Dorthey, 623 So.2d 1276 (La.1993), and imposed a sentence of only 25 years at hard labor without benefit of probation, parole or suspension of sentence, well below the minimum mandatory sentence of 49½ years without benefit mandated for a second felony offender.
The defendant appeals, making three assignments of error. One assignment of error pertaining to his sentence was specifically abandoned by appellate counsel and is thus not before this court. The remaining assignments challenge the sufficiency of the evidence of armed robbery and the propriety of the defendant's adjudication as a habitual offender.

SUFFICIENCY OF EVIDENCE
The defendant argues that the evidence adduced at trial was not sufficient to convict him of the crime of armed robbery. Maintaining that the state's case against him is circumstantial, he contends that every reasonable hypothesis of innocence was not excluded. In particular, he claims that there was no evidence he had the necessary intent to commit armed robbery or that he conspired with anyone to commit armed robbery. He further asserts that the most damaging evidence, his own statement to the FBI agent, would only support a conviction of accessory after the fact to the theft of a cash register, not principal to armed robbery.
La. R.S. 14:64 provides in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
The proper standard of appellate review for a sufficiency of evidence claim under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, the instant conviction was only based partly on circumstantial evidence. The Jackson standard is applicable in cases involving both direct and circumstantial *1268 evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988). Though intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988); State v. Hall, 26,505 (La.App.2d Cir.12/7/94), 647 So.2d 453, writ denied, 95-2188 (La.3/17/97), 691 So.2d 69.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
A review of the record reveals both direct and circumstantial evidence that the defendant was in fact the getaway driver for the armed robbery. First, the testimony of Lewis indicates the defendant's involvement in the planning of the crime. He testified that McCray, who was positively identified as the gunman, stopped to speak only with the defendant shortly before the armed robbery. They had a private, whispered conversation, followed by the defendant's departure alone with McCray in a small white car.
The eyewitness testimony of the victims in the restaurant and Troquille established beyond any reasonable doubt that McCray robbed the restaurant at gunpoint, fled the restaurant with the money, was chased up the hill by the gun-wielding Troquille, and got into a white car. The defendant's own statement to Agent Darrah placed him inside McCray's white car behind the restaurant at the time of the armed robbery. The defendant's admission that he was present in McCray's white car at the time and place of the robbery is the most crucial piece of evidence linking the defendant to the crime as the driver of the getaway car. Even though the defendant claims that he was not the person who committed the crime, this admission alone negates any reasonable probability of misidentification.
The defendant's statement asserted that, while he was in McCray's car, he saw a person known to him as "Chunkie," carrying a cash register and accompanied by an unknown associate, being chased by a man with a gun. The exculpatory portion of the defendant's statement was clearly contradicted by the victims and Troquille who testified that McCray was, in fact, the sole gunman who fled on foot up the hill, carrying a cash register and/or cash drawer, and got into the waiting car. No fictional "Chunkie" or other unknown associate was either identified or placed at the scene of the armed robbery by the witnesses. The *1269 jury obviously determined that the defendant's self-serving account was far-fetched and not worthy of belief. A jury's credibility determinations will not be disturbed on appeal.
The defendant's statement that he allowed the fleeingand blatantly pursued "Chunkie" and his unknown associate to enter the vehicle carrying a cash register and that he and McCray were paid $800 for transporting them from the scene is further evidence of his obvious guilty knowledge that a crime had been committed and that flight was necessary to prevent apprehension. The defendant's admission of flight from the scene and his subsequent flight from the jurisdiction were sufficient evidence for the jury to deduce his knowledge of and involvement in the armed robbery.
The defendant's assertion that his conviction was based solely upon circumstantial evidence, and therefore every reasonable hypothesis of innocence must be excluded, is without merit. The defendant's confession that he was the getaway driver is direct evidence of his involvement in the offense. Thus, the standard of review of the sufficiency of the direct and circumstantial evidence applies in the instant case. Viewed in the light most favorable to the prosecution, the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime of principal to armed robbery.
This assignment of error is without merit.

HABITUAL OFFENDER PROCEEDINGS
The defendant asserts that he was improperly adjudicated a habitual offender and that his motion to quash the previous conviction for obscenity in 1993 was improperly denied by the trial court. At the habitual offender proceeding, the defendant's counsel argued that the trial court in the 1993 predicate offense failed to adequately explain the nature of the obscenity charge to which the defendant pled. On appeal, the defendant raises additional arguments in which he contends that the 1993 guilty plea colloquy was deficient due to noncompliance with the provisions of La.C.Cr.P. art. 556.1, i.e., that the trial court failed to explain enhanced penalties for subsequent offenses and did not inform the defendant of the mandatory minimum sentence of six months for a first conviction of obscenity.
Review of the 1993 guilty plea reveals no constitutional deficiencies. It was adequately conducted in compliance with the Louisiana Supreme Court's dictates for felony guilty pleas in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). As to the contention that the trial court was required to explain the nature of the charge, we look to the Supreme Court's recent pronouncement in State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517. There, as in the present predicate plea, the defendant was represented by counsel and "nothing in the contemporaneous records of the guilty plea undercuts the presumption that counsel explained the nature of the charge in sufficient detail that the defendant had notice of what his plea asked him to admit." The Anderson court further noted that while advice as to the defendant's sentencing exposure may facilitate the taking of a voluntary guilty plea, "it has never formed part of this Court's core Boykin requirements for the entry of a presumptively valid guilty plea in any case [emphasis theirs]." Thus, we find no constitutional infirmity as to the failure to inform the defendant of sentencing consequences or exposure.
Nor do we find any statutory deficiencies in the 1993 guilty plea. The effective date of La.C.Cr.P. art. 556.1 was August 15, 1997, and it was not applicable to a guilty plea taken in 1993.
This assignment of error lacks merit.

*1270 ERRORS PATENT

Illegally lenient sentence
The trial court imposed an illegally lenient sentence of 25 years at hard labor without benefit of probation, parole or suspension of sentence. The trial court did not order the mandatory sentence of 49½ years at hard labor, without benefit, as a second felony offender, as required under the Habitual Offender Statute, La. R.S. 15:529.1. Although the state made an objection at the sentencing hearing, it failed to file a motion for reconsideration of sentence[3] or to appeal the sentence. Because the state did not appeal this sentencing error, we may not correct this illegality. State v. Fraser, 484 So.2d 122 (La.1986); State v. Hawkins, 32,737 (La. App.2d Cir.10/27/99), 743 So.2d 892.

Post-conviction relief
We note that the trial court failed to properly advise the defendant regarding the prescriptive period for filing post-conviction relief pursuant to La.C.Cr.P. art. 930.8. Consequently, the trial court is directed to send appropriate notice in accordance with the recently amended provisions of La.C.Cr.P. art. 930.8 (Acts 1999, No. 1262) within 30 days of the rendition of this opinion, and then file in the record proof that the defendant received such notice. State v. Morvan, 31,511 (La.App.2d Cir.12/9/98), 725 So.2d 515, writ denied, 99-0186 (La.5/28/99), 743 So.2d 659.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Information in the defendant's PSI report indicates that Mrs. Du was struck in the leg by a ricocheting bullet.
[2] We note some confusion in the record as to whether the robber took the cash register, just a cash register drawer, or both.
[3] Although the prosecutor stated he would file a motion to reconsider "in due course," no such motion was ever filed.