Judgment rendered December 14, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,890-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                      Appellee

versus

JUWAN WELLS                             Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 239,577

Honorable Michael Owens Craig, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Holli Ann Herrle-Castillo

JOHN SCHUYLER MARVIN                   Counsel for Appellee
District Attorney

ROBERT RANDALL SMITH
RICHARD RUSSELL RAY
Assistant District Attorneys

* * * * *

Before MOORE, STEPHENS, and ROBINSON, JJ.

STEPHENS, J., dissents with written reasons.

**ROBINSON, J.**

Juwan Wells, who pled guilty to vehicular homicide, appeals his conviction and sentence. We affirm both.

## FACTS

On March 7, 2021, Wells, who was significantly intoxicated, drove his vehicle westbound on Highway 162, a two-lane road in Bossier Parish. His vehicle was traveling 70 mph in a 55-mph zone. Other motorists observed Wells' vehicle veer into the opposing lane of travel several times and actually travel in the opposing lane of travel for approximately one mile. An approaching Uber driver moved his vehicle to the shoulder to avoid a head-on collision with Wells' vehicle, but Wells also moved his vehicle to the shoulder of the opposing lane of travel and struck that vehicle, in which Melissa Lawrence was a passenger. Unfortunately, Ms. Lawrence died of her injuries from the accident. She was survived by a 9-year-old daughter and a 19-year-old daughter.

Blood drawn at the hospital where Wells was brought for emergency treatment for his injuries revealed that his blood alcohol content was 0.21g%. Tetrahydrocannabinol was also present in his system. Wells was charged with committing vehicular homicide (La. R.S. 14:32.1), first degree vehicular negligent injuring (La. R.S. 14:39.2), and reckless operation of a vehicle (La. R.S. 14:99).

On September 23, 2021, Wells pled guilty to committing vehicular homicide in violation of La. R.S. 14:32.1(B). The remaining charges were dismissed. The parties stipulated that his blood alcohol level was over 0.15% but less than 0.20% even though his level was actually higher when it

was measured at the hospital where he was taken for treatment following the accident.

La. R.S. 14:32.1 provides, in relevant part:

A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
. . . . .
(4) The operator is under the influence of alcoholic beverages.
. . . . .

B. Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the operator's blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the offender was previously convicted of a violation of R.S. 14:98, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a court-approved substance abuse program and may require the offender to participate in a court-approved driver improvement program. All driver improvement courses required under this Section shall include instruction on railroad grade crossing safety.
C. Whoever commits the crime of vehicular homicide shall be sentenced as an offender convicted of a crime of violence if the offender's blood alcohol concentration, at the time of the offense, exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood.

When setting the post-conviction bond, the trial court reminded Wells that he remained under the bond conditions of not operating a motor vehicle or consuming any alcohol or illegal drugs. Wells violated his bond conditions in November of 2021.

Sentencing was held on December 16, 2021. Wells' mother and Lawrence's brother testified at the hearing. The trial judge noted that he had reviewed the presentence investigation report. Letters submitted by family members and others were also considered. The trial judge recognized that Wells was a first-felony offender, had strong family support, and was only 24 years old when the homicide occurred.[1] However, he also recognized that Wells had a blood alcohol content of 0.21g% and that his decisions resulted in the death of a person. The trial judge considered that mitigating factors were diminished because Wells had violated his bond condition not to drive when he was ticketed for driving a vehicle without valid plates. Wells also violated his bond conditions because he was in possession of marijuana when he was stopped.

The trial judge initially sentenced Wells to 20 years at hard labor, with the first 5 years to be served without benefits. However, when the judge was made aware that Wells had pled guilty without the offense being considered a crime of violence under La. R.S. 14:32.1(C), he modified Wells' sentence so that he was to serve 25 years at hard labor, with the first 5 years to be served without benefits.

On January 07, 2022, Wells filed a motion to reconsider sentence. He contended his sentence was excessive in light of his age and his lack of a

_____

[1] Wells' date of birth is June 6, 1997, making him 23 years old at the time of the offense.

criminal history before his arrest in this matter. Regarding the violations of his bond conditions, he acknowledged that he used extremely poor judgment.

At the hearing on the motion to reconsider sentence held on February 28, 2022, Wells' counsel again mentioned Wells' lack of a prior felony, his young age, and his children. In denying the motion, the trial judge stated that he had considered that Wells had violated his bond conditions as well as everything mentioned in the PSI report, including his lack of a criminal history, his social history, and his age.

Wells contends on appeal that his guilty plea was invalid and that his sentence is excessive.

## DISCUSSION

### *Guilty plea*

In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. La. C. Cr. P. art. 556.1(A)(1). Any variance from the procedures required by art. 556.1 which does not affect substantial rights of the accused shall not invalidate the plea. La. C. Cr. P. art. 556.1(E).

Wells contends that his guilty plea was invalid because he pled guilty without being advised of the maximum sentence that he could have received for the offense. Although the minimum sentence was referred to during the colloquy, Wells contends there is no way to determine the sentencing range that his trial counsel explained to him. Wells argues he was a stranger to the

4

criminal justice system and unfamiliar with the nuances of guilty pleas and plea deals, making it imperative for the trial court to abide by La. C. Cr. P. art. 556.1 to avoid violating his rights. Thus, he maintains that his guilty plea was neither knowingly nor voluntarily made and must be vacated.

In *State v. Robertson*, 53,970 (La. App. 2 Cir. 6/30/21), 322 So. 3d 937, Robertson pled guilty to DWI, fourth offense. At the guilty plea hearing, the trial court did not advise Robertson of the sentencing range, and the sentencing range was not stated in the Boykin transcript. However, Robertson answered in the affirmative when the court asked him if his attorney had explained the sentencing range to him. Robertson argued on appeal that the trial court's failure to advise him of the minimum and maximum penalties was not harmless error and that it violated La. C. Cr. P. art. 556.1. Rejecting that argument and finding the trial court's failure to state the potential sentencing exposure on the record to be harmless error, this Court stated:

> Even though "advice with respect to the defendant's sentencing exposure may facilitate the taking of a voluntary guilty plea, [it] does not form part of the core *Boykin* requirements for the entry of a presumptively valid guilty plea." *State v. Anderson*, 98-2977 (La. 3/19/99), 732 So. 2d 517; *State v. Burford*, 39,610 (La. App. 2 Cir. 5/11/05), 902 So. 2d 1190, *writ denied*, 05-1573 (La. 1/27/06), 922 So. 2d 545.
>
> In *State v. Demease*, 33,047 (La. App. 2 Cir. 4/5/00), 756 So. 2d 1264, *writ denied*, 00-1488 (La. 5/25/01), 792 So. 2d 750, this court determined that the trial court's failure to inform the defendant of the sentencing consequences or exposure before he pled guilty to the predicate offense did not result in constitutional infirmity. This court stated that while advice as to a defendant's sentencing exposure may facilitate the taking of a voluntary guilty plea, it never formed part of the court's core *Boykin* requirements for the entry of a presumptively valid guilty plea. Thus, there was no constitutional infirmity as to the failure to inform the defendant of sentencing consequences or exposure. *Id.*, *citing State v. Anderson*, *supra*.

5

*State v. Robertson*, 53,970 at pp. 7-8, 322 So. 3d at 942.

At the guilty plea hearing, the trial judge questioned Wells as follows regarding his understanding of the sentencing range:

> THE COURT:  He's explained to you the minimum and maximum penalties associated with the offense of Vehicular Homicide under paragraph -- B, you said?
>
> MR. JOHNSON:  It's 32.1, Subsection B, Your Honor.
>
> THE COURT:  All right. Which is - - there's gonna be stipulated that the blood alcohol content was greater than 1.5 grams per body weight but less than 2.0; he's explained those sentencing parameters to you?
>
> MR. WELLS: Yes, sir.

Following this Court's reasoning in *State v. Robertson* and recognizing that Wells acknowledged in court that his attorney explained the sentencing range to him, we conclude that any error committed by the trial court in this instance was harmless error.

We note that La. C. Cr. P. art. 556.1 was amended in 2021 by Act 271 to add subparagraph (A)(5), which states, in part:

> A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
>
> . . . . .
>
> (5) That if he pleads guilty or nolo contendere, he may be subject to additional consequences or waivers of constitutional rights in the following areas as a result of his plea to be informed as follows:
> (a) Defense counsel or the court shall inform him regarding:
> (i) Potential deportation, for a person who is not a United States citizen.
> (ii) The right to vote.
> (iii) The right to bear arms.
> (iv) The right to due process.
> (v) The right to equal protection.
> (b) Defense counsel or the court may inform him of additional direct or potential consequences impacting the following:

(i) College admissions and financial aid.
(ii) Public housing benefits.
(iii) Employment and licensing restrictions.
(iv) Potential sentencing as a habitual offender.
(v) Standard of proof for probation or parole revocations.
(c) Failure to adhere to the provisions of Subsubparagraphs (a) and (b) of this Subparagraph shall not be considered an error, defect, irregularity, or variance affecting the substantial rights of the accused and does not constitute grounds for reversal pursuant to Article 921.

. . . . .

La. C. Cr. P. art. 921 states that a "judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."

Citing the language in art. 556.1(A)(5)(c), Wells contends that the trial court's failure to advise the defendant of any one of the requirements in subparagraphs (A)(1) through (A)(4) is an error affecting the substantial rights of the accused and constitutes grounds for recusal. We disagree insofar as subparagraph (A)(1) is concerned.

First, we note that a reference to substantial rights is also stated in subparagraph (E) of art. 556.1: "Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea." Second, as noted earlier, this Court stated in *Robertson* that the failure of the trial court to advise a defendant of the sentencing range before taking a guilty plea is harmless error when the defendant acknowledges in court that his attorney had advised him of the sentencing range.

Wells' argument on this issue is without merit. His guilty plea was valid.

*Excessive sentence*

Wells contends that his sentence is excessive for him. He notes that the trial court considered his lack of a felony record, strong family support, and his young age. He also notes that the trial court believed he was 24 years old at the time of the crime, when he was actually 23 years old at that time.

Wells argues that the fact that someone died from his actions should not be considered an aggravating factor since a death is a required element of vehicular homicide. Wells further argues that while his driving against court orders showed poor judgment on his part, it was an isolated incident that does not show he is incapable of rehabilitation or needs a 25-year sentence to grasp the seriousness of his offense.

Wells asks this Court to take judicial notice of the scientific and medical research showing that the rational part of the brain does not fully develop until the age of 25 or older. Wells also asks this Court to compare his sentence to the sentences imposed in similar cases. He particularly notes cases where the defendant received a lesser sentence for vehicular homicide despite having a prior criminal history. He argues that his sentence is grossly out of proportion to the underlying crime when compared to other sentences reviewed by this Court as well as other appellate courts in Louisiana.

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article.

8

*State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even where there has not been full compliance with art. 894.1. *State v. Fontenot*, 49,835 (La. App. 2 Cir. 5/27/15), 166 So. 3d 1215.

The defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation are important elements to consider. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Boehm*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Boehm*, *supra*.

Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. On review, an appellate court does not

determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Boehm*, *supra*.

The trial court considered mitigating and aggravating factors as set forth in La. C. Cr. P. art. 894.1. Wells' sentence is five years less than the maximum sentence. The portion of his sentence to be served without benefits is the statutory minimum. Wells also received a benefit from his plea agreement in that two other charges were dismissed. Although not specifically mentioned by the trial judge at sentencing, we note that the PSI report reflects that Wells was arrested in Caddo Parish in 2016 for simple assault. He pled guilty as charged and was given a six-month suspended sentence as well as six months of probation. We also note that Melissa Lawrence was not the only person injured in the accident as the Uber driver also suffered injuries. Finally, we note that Ms. Lawrence's husband was killed in a work-related accident in 2018. Her daughters were left orphaned because of Wells' decision to drive while impaired. For the foregoing reasons, Wells' sentence does not shock the sense of justice. The trial judge did not abuse his discretion in the sentence that he rendered.

**DECREE**

Juwan Wells' conviction and sentence are AFFIRMED.

10

**STEPHENS, J., dissenting**.

I respectfully dissent in the opinion penned by my learned brethren. While I recognize the importance of continuity in following existing caselaw, I point out that we are a civil law state, not a common law state. In La. C. Cr. P. art. 556.1, the legislature clearly stated that the trial court **shall not** accept a guilty plea unless it has first **personally** informed the defendant of the maximum and minimum sentences for the offense. The legislature was uncharacteristically clear and unambiguous in its intent and mandate.

The majority has understandably elected to follow *State v. Guzman*, 99-1753 (La. 5/16/00), 769 So. 2d 1158, wherein the Supreme Court inexplicably decreed that legislative mandates are apparently merely suggestions to be adhered to when convenient. However, even accepting *Guzman* as the law of the land, it is clearly distinguishable from this case.

First, *Guzman* only addressed the failure of the trial court to advise the defendant of the minimum sentence, not both the minimum and maximum sentences. Also, it involved an enhanced penalty for subsequent offenses, not the offense itself. To suggest that a failure of the trial court to advise the defendant of the maximum sentence for the offense to which he/she is pleading, constitutes *harmless error* is disingenuous at best. I would note also that the supreme court itself, in *State v. Guzman*, 99-1753, p. 11 (La. 5/16/00), 769 So. 2d 1158, 1165, citing *U.S. v. Johnson*, 1 F. 3d 296, 303, n. 31 (5th Cir. 1993), acknowledged that "the determination of harmless error was a fact sensitive inquiry and that what might be harmless error in one case may not be in another case."

For these reasons, I respectfully dissent.

1