513 So.2d 438 (1987)
STATE of Louisiana, Appellee,
v.
Robin Lynn SMITH, Appellant.
No. 18903-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
*439 Bodenheimer, Jones, Klotz & Simmons by F. John Reeks, Jr., Shreveport, for appellant.
Richard Carney & Tommy Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Robin Lynn Smith, was charged by bill of information with armed robbery, LSA-R.S. 14:64, for his involvement in an incident at a 7-Eleven store in Shreveport. After a jury trial, he was found guilty of the lesser offense of first *440 degree robbery, LSA-R.S. 14:64.1. He was sentenced to 30 years' imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Smith now appeals, urging two of his original assignments of error. For the reasons expressed, we affirm the conviction.

FACTS
Shortly after 4:30 on the morning of February 6, 1986, police received a report of an armed robbery at the 7-Eleven store on Jewella at West 70th Street. The store clerk, Ms. Anthony, was working the graveyard shift alone when two men walked into the store. The first, later identified as Donald Dallas, went directly to the cash register, while the second, defendant Smith, walked past the counter, stationed himself about five feet from Ms. Anthony and faced the front of the store. Dallas asked Ms. Anthony for change for a dollar; when she hit the "no sale" key on the register, Dallas said, "Give me your money," and brandished a pistol at his side. Ms. Anthony began to take the money from the drawer when Dallas said, "Hurry up," so she lifted the whole drawer, including a marked $2 bill, and handed it to him. Dallas then walked out, immediately followed by Smith. Because she was scared, Ms. Anthony had not looked closely at Smith. However, she could see through the window the rear end of a light blue car which sped off the parking lot immediately after the robbers left. She called the police, gave a description of her assailants and reported that they had driven off. She later told police she thought Smith had served as a lookout man while the robbery occurred.
Officer R.J. Smith, who had received a radio dispatch about the robbery, was driving east on West 70th toward the 7-Eleven when he passed a speeding blue Buick going west. Officer Smith turned around and gave chase, reaching a speed of 80 m.p.h. With the assistance of Officers Dodson and Jackson, to whom he had radioed for help, he eventually stopped the car on Greenwood Road just west of Monkhouse Drive. Inside the car were three black men: Smith in the back seat, Dallas in the front passenger seat, and a third suspect, Calvin Elie, behind the wheel. They were taken into custody.
During the next few hours, police combed the path between the 7-Eleven and the place where the stop was made. Detective Magaha recovered the cash drawer on the side of 70th Street. Detective Shock and Sergeant Wyche obtained a consent to search the Buick and recovered about $10 in loose change and bills, including the marked $2 bill. Defendant Smith led officers to an area on 70th Street where Dallas's gun was eventually recovered.
Each of the three suspects testified in Smith's defense. Calvin Elie, the driver, testified that he had been driving around with Dallas late on the night of February 5, when he saw Smith walking down Line Avenue between 73rd and 74th Streets. He offered Smith a ride, which Smith accepted. They spotted Smith's brother, Albert, going down Youree; they flagged him down and he gave Smith a few dollars for gas, which Smith handed to Elie. Elie testified that they did not take Smith home immediately, but stopped at the 7-Eleven on Jewella at 70th. Disclaiming any knowledge that a robbery was afoot, Elie testified he waited in the car while Dallas and Smith went in for cigarettes; when they returned about five minutes later, he drove off at normal speed. About a quarter of a mile down the road, they told him about the robbery. On cross-examination, the prosecutor developed the time frame of the night's activities. Elie admitted he had started driving about 10 p.m. and must have picked up Smith at 11:00 or 11:30. After first saying they had just driven around until the robbery at 4:30, Elie admitted that they had earlier stopped at another 7-Eleven on Midway, where he had waited in the car while Smith and Dallas went in. He resolutely denied, however, any knowledge of robbery until a few minutes after they left the 7-Eleven on Jewella. For his involvement in the incident, he pled guilty to accessory after the fact of armed robbery.
*441 Dallas testified that he and Elie picked up Smith between 11:30 and midnight, and then drove around a while until they stopped at the Jewella Street 7-Eleven. After he and Smith entered the store, he asked for change and pulled a gun on the cashier. He claimed that Smith probably did not suspect his intended robbery and did not even know he had a gun. According to Dallas, Smith stood by silently and left immediately when Dallas left. On cross-examination, Dallas admitted that he pled guilty to attempted armed robbery in exchange for the state dropping a first degree robbery charge stemming from the earlier incident at the Midway 7-Eleven store. He further admitted that after picking up Smith, they went to his grandmother's house and got the gun. This was around 2:00 a.m.
Smith took the stand and on direct examination corroborated the others' version of how they met him on the street about 11:00 or 11:30, adding that he had been playing pool that evening and had lost all his money. He testified that they rode to the Midway 7-Eleven shortly after midnight; he bought a beer there. As he was leaving, he saw Dallas walk out with an armload of cigarette cartons. Smith said the clerk asked him if he knew Dallas, to which Smith said, "Yes," and left. They got back into the car and Dallas told them they had to go get some cocaine; Elie drove them to a house in Cedar Grove where Dallas swapped the cigarettes for some "coke." Dallas then instructed Elie to drive to his grandmother's house on 69th Street, where Dallas started "fixing up" to take the coke. Dallas then went inside, came back and said, "Let's go." Smith testified that he kept asking them what they were doing, to no avail. They drove to the 7-Eleven at Jewella, and Dallas headed in; Smith almost did not follow him, but went in after all. After the robbery, they returned to the car and sped off, eventually being stopped by the police. While still on direct examination, Smith admitted a lengthy record of prior convictions and arrests, including an attempted burglary of a 7-Eleven store, for which he was serving probation when the instant offense occurred. On cross-examination, Smith admitted two previous convictions for theft and one for forgery. He said he saw Dallas take the cigarettes from the Midway 7-Eleven and denied taking part in the robbery. He also admitted staying with Dallas while they sat in front of his grandmother's house and Dallas used the cocaine. He said he stayed with them because he had known Elie since childhood and trusted him implicitly. He claimed he went into the Jewella 7-Eleven with Dallas "just to see what he was up to."
As rebuttal, the state offered the testimony of Cecil Harper, the clerk of the Midway 7-Eleven. He testified that around 12:00 or 12:30, Smith had come in alone, asked the price of a quart of beer, looked around and left. Then about 12:50, Smith came back in with another man. The other man picked up eight cartons of cigarettes while Smith stood by the door and told the clerk, "Stay right there. Don't try anything." According to the clerk, Smith had his hand in his pocket with an object visibly bulging out; because of Smith's menacing words, the clerk felt sure this was a weapon. The clerk identified Smith at a video lineup the next day.

OTHER CRIMES EVIDENCE
By these closely allied assignments of error, Smith claims that evidence of another crime he allegedly committed was inadmissible and that the state failed to give adequate notice of its intent to use the evidence under State v. Prieur, 277 So.2d 126 (La.1973). Smith concedes that the state may use evidence of other criminal acts in order to prove intent, knowledge or system. LSA-R.S. 15:445. He argues, however, that the crime for which he was tried was not similar to and part of a common system with the other crimes evidence. Thus he concludes the evidence was introduced only to show that he is a "bad man," and this is an impermissible purpose. State v. Herman, 358 So.2d 1282 (La.1978), and citations therein.
The law has established exceptions to the general rule of inadmissibility and we have examined whether this case falls into one *442 of those exceptions. See, generally, State v. Kahey, 436 So.2d 475 at 487 (La.1983). LSA-R.S. 15:446 provides:
§ 446. Evidence where knowledge or intent is material and where offense is one of a system
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.
A plain reading shows that intent may be proved by evidence of acts or conduct that tend to establish the fact of intent. The prior doing of similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. State v. Kahey, supra; 2 Wigmore, Evidence § 302 (3d ed. 1940). When intent is an issue, other acts become relevant to show by similar offenses that the act for which the defendant is on trial was not inadvertent, accidental, unintentional, or without guilty knowledge. McCormick, Evidence § 190 at 450 (Cleary ed. 1972); State v. Kahey, supra. For this reason, the court does not generally require any feature of common purpose or general scheme. State v. Monroe, 364 So.2d 570 (La.1978). The other acts must be similar, but need not be part of a scheme. Notably, the requirement of a "signature crime" has been most commonly imposed in cases where identity, not intent, was the issue. See State v. James, 396 So.2d 1281 (La.1981); State v. Humphrey, 412 So.2d 507 (La.1982) (on rehearing). The state therefore did not have to prove that the prior conduct was a signature crime.
In this case intent was not merely an issue but was the backbone of the defendant's case. Counsel made this clear in both his opening statement and closing argument. R.p.p. 86, 277-279. In fact, the strategy was for Smith to admit his presence during the robbery, but to assert he had no idea that his friend Dallas was about to commit a crime. Under these circumstances, intent was a real and genuine issue. State v. Monroe, supra; State v. Nelson, 357 So.2d 1100 (La.1978).
We have next questioned whether the other act and the charged offense were similar. Both involved the same three men. On each occasion, the same man, Dallas, actually committed the taking, while the defendant apparently served as a "lookout," and the third man, Elie, operated the get-away car. Both incidents occurred at the same kind of store, a 7-Eleven, on the same night, and within a few hours of each other. Both incidents occurred within a time span in which each of the three principals testified that they were together. Finally, both incidents were robberies, regardless of the statutory degree or the thing of value taken. We consider the two incidents strikingly similar. Although they may not be identical enough to establish a modus operandi and prove a defendant's identity, we find them similar enough to be relevant to prove intent.
Finally we have asked whether the probative value of the evidence outweighs its prejudicial effect. As an alleged participant in an armed robbery, Smith stood in the posture of a principal and the robber's intent could not be directly transferred to him. LSA-R.S. 14:24; State v. Holmes, 388 So.2d 722 (La.1980); State v. Sampson, 472 So.2d 337 (La.App. 3d Cir.1985). The state's evidence of the prior offense, related through the clerk of the Midway 7-Eleven, was critical in establishing the likelihood that Smith knew what Dallas was about and intended to aid and abet him. No doubt the evidence was prejudicial, but under circumstances where Smith himself admitted the essential elements of his involvement in the other crime, we feel its prejudicial effect was less than its highly probative value. The evidence was properly admitted on this basis.
Furthermore, the evidence of the other crime was first offered by the defense. The state, in its case-in-chief, never mentioned the incident at the Midway 7-Eleven.
*443 When defense witness Calvin Elie was on the stand, he admitted on cross-examination that he had stopped at the Midway 7-Eleven. The defense objected to the use of other crimes evidence and the state never asked Elie whether he had participated in a robbery at that store. R.p.p. 205, 210. The next defense witness, Donald Dallas, admitted on direct examination that the state had dropped charges stemming from an incident occurring the same night at the Midway 7-Eleven in exchange for a guilty plea involving the Jewella store. R.p. 218. Finally, when Smith took the stand, he gave an exculpatory account of the night's events, specifically referring to the earlier incident. R.p.p. 228, 229. On cross-examination, he admitted seeing Dallas steal the cigarettes at the Midway store. R.p. 242. Only after the defense rested, and the state was on rebuttal, did the direct evidence of Smith's involvement at the Midway store come out. This was when Cecil Harper positively identified Smith as the look-out man in the robbery at Midway. The defense lodged no objection either to the cross-examination of Smith or to the direct examination of Harper.
Despite the general prohibition against other crimes evidence, there are different considerations in force when the defendant affirmatively raises specific issues of fact which the otherwise inadmissible evidence becomes necessary to rebut. See State v. Morris, 362 So.2d 1379 (La.1978); State v. Batiste, 363 So.2d 639 (La.1978) (on rehearing). By taking the stand, mentioning the prior incident and attempting to exculpate himself, he "opened the door" to the issue and entitled the state to contradict his account. State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984), writ denied 461 So.2d 312 (La.1984); State v. Scroggins, 465 So.2d 820 (La.App. 2d Cir.1985), writ granted on other grounds 469 So.2d 975 (La.1985); reconsid. denied 472 So.2d 914 (La.1985).
Furthermore, the state has a broad right of cross-examination of the defendant, LSA-R.S. 15:462, as well as a right to impeach any witness, LSA-R.S. 15:484. When Smith took the stand with his exculpatory account of the Midway incident, the state carefully cross-examined him to see whether he would stand by his testimony, and then called a witness to contradict him. Cecil Harper's account of the Midway incident was significantly different from Smith's. This testimony was admissible to contradict Smith, rather than to prove the state's case. State v. Hatter, 338 So.2d 100 (La.1976); State v. Diggs, 261 La. 76, 259 So.2d 18 (1972).
For all these reasons, we conclude that the evidence of the robbery at the Midway 7-Eleven was admissible and the first assignment does not present reversible error.
Smith next contends that the other crimes evidence was inadmissible because he received no advance notice of the state's intent to use it. The state, within a reasonable time before trial, must furnish in writing to the defendant a particularized statement of the other acts or offenses it intends to offer, specifying the exception to the general exclusionary rule upon which it intends to rely for its admissibility. State v. Prieur, supra; State v. Germain, 433 So.2d 110 (La.1983). Our review of the record shows that the state did not adequately comply with the requirements of Prieur although it attempted to comply with the statutory requirements of discovery. LSA-C.Cr.P. 720.[1] However, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. LSA-C.Cr.P. art. 841; State v. Morris, 429 So.2d 111 (La.1983). In this case, Smith lodged one objection, during Calvin Elie's cross-examination, urging only that evidence of other crimes was inadmissible. R.p. 205. He did not specifically object to lack of a Prieur *444 notice. The subsequent instances when the evidence was offered, Smith's cross-examination and Harper's direct examination, passed completely without objection. Under these circumstances, a defendant is considered to have waived his right to prior notice and hearing. State v. Kahey, supra; State v. Davis, 411 So.2d 434 (La.1982).
Moreover, when counsel raised his objection to the introduction of other crimes evidence, his argument showed that he was intimately familiar with the facts of the other offense. In fact, when Smith later took the stand, he admitted all the salient details of the Midway incident. The purpose of Prieur notice and disclosure is to prevent unwarranted prejudice from surprise evidence. State v. Rault, 445 So.2d 1203 (La.1984), cert. denied 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. White, 430 So.2d 171 (La.App. 2d Cir.1983), writ denied 433 So.2d 1055 (La.1983). Nothing suggests that the defense was in any way surprised by the presentation of this evidence. See State v. Walker, 394 So.2d 1181 (La.1981). While prejudice is not necessarily a requirement for the establishment of a Prieur violation, the defendant's awareness of the imminent introduction of the other crimes evidence and his decision not to invoke Prieur as a basis of objecting fully supports a finding of waiver. State v. Walker, supra; State v. Kahey, supra; State v. Davis, supra; State v. Goza, 408 So.2d 1349 (La.1982) (conc. op. of Lemmon, J.).
This assignment does not present reversible error.

SUFFICIENCY OF EVIDENCE
By these assignments Smith argues that the evidence was insufficient to sustain a verdict of guilty. The constitutional standard of review for the sufficiency of evidence is whether, viewing it in light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). When circumstantial evidence is used to prove the commission of an offense, LSA-R.S. 15:438 mandates that, assuming "every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied 463 So.2d 1317 (La.1985). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983). The statutory rule provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is a component of the more comprehensive reasonable doubt standard when circumstantial evidence is used to convict. Therefore, although the statutory rule may not establish a stricter standard than the more general reasonable juror's reasonable doubt formula, it does emphasize the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La.1983); State v. Eason, supra.
First degree robbery is defined in LSA-R.S. 14:64.1 as
the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding and abetting another. State v. Smith, 450 So.2d 714 *445 (La.App. 4th Cir.1984); LSA-R.S. 14:24. Under this theory, the defendant need not have actually performed the taking to be found guilty. See State v. Dominick, 354 So.2d 1316 (La.1978). Dallas admitted that he himself had wielded a gun, held up the cashier and taken the money. R.p. 216. The jury was entitled to infer from Smith's similar conduct of standing by at both robberies that he intended to aid and abet Dallas by serving as a lookout. Thus Smith could have been found guilty as a principal to armed robbery or to any lesser included offense. The jury was properly instructed as to the responsive verdicts. R.p.p. 289-290.
Even if the state had not offered rebuttal evidence to prove Smith's intent, the jury could have found him guilty. When a defendant admits his presence at a robbery and never argues that he was coerced by his coperpetrators to commit a crime, this amounts to a very strong showing of intent. State v. Corkern, 461 So.2d 1238 (La.App. 1st Cir.1984). In addition, the victim testified she thought Smith was a lookout, and this supports his participation in the crime. Smith himself supplied a motive by admitting he had lost all his money in a pool game that evening. This is sufficient to establish the intent to take.
Most importantly, Smith's claims of innocence were seriously undermined by his substantial record of convictions. See LSA-R.S. 15:495. He admitted on direct examination other criminal activity that did not result in conviction. On matters of credibility the jury is the arbiter, and the jury was entitled to disbelieve the self-serving testimony of this impeached witness. Viewed in light most favorable to the prosecution, the evidence was sufficient to convince any rational factfinder that Smith participated with, or aided and abetted, Donald Dallas in the commission of first degree robbery.
These assignments do not present reversible error.
For the reasons expressed, Robin Lynn Smith's conviction is affirmed.
AFFIRMED.
NOTES
[1] The discovery colloquy was as follows:

Defendant's Request:
The defendant desires that the court order the District Attorney to inform the defendant, in writing, of the State's intent to offer evidence of the commission of other crime.
State's Response:
None other than res gestae and proof of the armed robbery and first degree robbery at both 7-11's. R.p.p. 33, 58.