818 So.2d 310 (2002)
STATE of Louisiana, Appellee,
v.
Aaron TOLLIVER, Jr., Appellant.
No. 35,930-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*312 Wilson Rambo, Louisiana Appellate Project, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, J. Michael Ruddick, Cynthia P. Lavespere, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
CARAWAY, J.
Defendant was convicted of armed robbery and sentenced to 25 years at hard labor, without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction, contesting the sufficiency of the evidence, and further asserts that his sentence was excessive. For the reasons stated below, defendant's conviction and sentence are hereby affirmed.

Facts
Michael Barron Browning was working the front desk at the Palms Motel in Monroe during the night shift on October 22 and 23, 2000. A little after midnight, the defendant, Aaron Tolliver, Jr. ("Tolliver"), entered the motel and requested a room for the night. As Tolliver filled out the registration form, a masked gunman entered the motel office and demanded all of the money. The gunman, who was armed with a Smith and Wesson semi-automatic.380 caliber pistol, fired one shot into the ceiling of the motel office. The gunman also went straight to the counter where he retrieved Browning's 9 millimeter pistol hidden underneath the counter. The gunman next placed his .380 caliber pistol against Browning's neck and demanded money. The gunman took three $5 bills from the register and fled on foot, leaving Tolliver and Browning at the scene.
The motel manager called 911, and the Monroe Police responded and began to search for the gunman. Tolliver told the police that he did not recognize the gunman and gave the police a vague description. The police located the gunman in an alley a short distance away. The K-9 unit was called, and the gunman fired at and killed the K-9 dog. In the subsequent exchange of gunfire with the police, the gunman was shot twice and killed. The gunman was a 17-year-old juvenile, Jeremy Burton (hereinafter "Jeremy"). Jeremy was armed with the .380 caliber pistol and the motel manager's 9 millimeter pistol. In his pocket were three $5 bills.
Jeremy's family was not immediately advised by authorities that he had been shot and killed. About 3:00 p.m. on October 23, 2000, Tolliver went to Raymond Wilson's place of employment. Wilson was married *313 to Jeremy's mother, Sonya Burton Wilson, and Jeremy was staying at the Wilson's home on October 22. On the evening of October 22, 2000, around 11:00 p.m., Wilson saw Tolliver in a blue Corsica automobile in Wilson's driveway with Jeremy and Mashaylin Green[1] inside the vehicle. Wilson asked Tolliver why he was at his job site. Tolliver informed Wilson that the night before "he was trying to do something and something didn't go right, and Jeremy was dead ..." Wilson testified that he had no idea what Tolliver was talking about.
Tonya Burton, Jeremy's cousin and legal guardian, also testified concerning conversations she had with Tolliver on October 23. She was attempting to confirm at that time whether Jeremy had been killed. She stated that Sonya Burton Wilson told her that Jeremy was seen leaving the Wilson residence the night before in Tolliver's blue car. She stated that Tolliver told her "that he and Jeremy had got together and planned everything because they were doing bad and he had told Jeremy that he knew of a way that they could make a come-up." She explained that a "come-up" was "a way that they could get some money."
Tolliver's conversation with Tonya Burton occurred while the two were riding in an automobile driven by Lawrence Burrell, who is also Jeremy's cousin. Burrell also confirmed that Tolliver told them how he and Jeremy planned the robbery of a motel, and that they bought a pistol "off the street."
As the three were driving around the city, Tonya Burton "talked in code" to direct Burrell to drive to the police station. After parking in the lot, Burrell held Tolliver down while Tonya Burton ran into the station for help. Tolliver was then arrested for armed robbery.
After the testimony of the state's witnesses, Tolliver called several witnesses in his own defense. None of the defense witnesses disputed Burrell and Tonya Burton's testimony concerning their questioning of Tolliver while driving him around Monroe and eventually to the police station on the evening of October 23. Additionally, Sonya Burton Wilson, who was called by the defense, confirmed that Jeremy left her home at 11:30 p.m. on October 22 with Tolliver in Tolliver's vehicle.
Yameca Greeley, Jeremy's other cousin, also testified as a defense witness. She spoke with Tolliver following the robbery. On cross examination, Greeley testified that Tolliver confided that he and Jeremy were at the Palms Motel the night before, that something went wrong, and that he thought Jeremy was dead.
Additionally, Tolliver testified in his own defense. He stated that on the night of the robbery, he and his girlfriend, Kimberly Gardner, got into a fight, and he decided to check into the Palms Motel. He further testified that he drove his girlfriend's blue Chevrolet Lumina. Tolliver testified that as he was filling out the motel registration card, someone with a covered face, came in and robbed the motel. Defendant claimed that he did not recognize the robber. After the robbery, Tolliver went to the police station to give a statement. There, he heard over the police scanner that shots were fired, and the robber was killed.
Tolliver denied being at the Wilsons' home with Jeremy on the evening of October 22. He also denied making any statements to Sonya Burton Wilson, Tonya Burton or Lawrence Burrell, other than he did not know where Jeremy was. Tolliver *314 denied ever telling them that he and Jeremy planned to rob the Palms Motel, or that something went wrong. Tolliver denied having anything to do with robbing the Palms Motel.
The jury found Tolliver guilty of armed robbery. The trial court ordered a presentence investigation report ("PSI"). On July 26, 2001, the trial court sentenced Tolliver to 25 years at hard labor, to be served without benefit of probation, parole or suspension of sentence. Prior to sentencing, the trial court extensively reviewed Tolliver's PSI, together with statements from the robbery victim and the deceased juvenile's family. This appeal followed.

Discussion

Sufficiency of the Evidence
Tolliver argues that no direct evidence or scientific evidence shows that he participated in the armed robbery. Also, Tolliver asserts that the witnesses' testimony to his alleged admissions were inconsistent and should not be deemed credible. Tolliver additionally claims that the Burton family members wanted to blame him for Jeremy's death.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
La. R.S. 14:64(A) provides that armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. In this case, Tolliver was charged as a principal to the armed robbery which Jeremy carried out.
La. R.S. 14:24 provides that all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427. Mere presence at the scene is *315 not enough to "concern" an individual in the commission of the offense. Id.; State v. Knowles, 392 So.2d 651 (La.1980). An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Pierre, supra; State v. Holmes, 388 So.2d 722 (La.1980).
The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. La. R.S. 14:24; State v. Smith, 513 So.2d 438 (La.App. 2d Cir.1987). Under this theory, the defendant need not actually take anything to be found guilty of the crime. Also, a defendant convicted as a principal need not have personally held a weapon to be guilty of armed robbery. State v. Dominick, 354 So.2d 1316 (La. 1978). A person, who aids and abets another in a crime, is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981). Armed robbery is a general intent crime, requiring that the defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. State v. Battieste, 597 So.2d 508 (La.App. 1st Cir.), vacated in part on other grounds, 604 So.2d 960 (La.1992); La. R.S. 14:10(2).
A critical inquiry in robbery cases involving principals is whether or not the alleged principal had knowledge that the crime was going to take place. For example, in State v. Smith, supra, this Court affirmed the defendant's conviction for armed robbery, holding that he could be convicted as a principal to armed robbery, or to a lesser included offense, based on the fact that he stood by during two armed robberies. This Court held that the jury could reasonably infer that he intended to aid and abet by acting as a lookout.
Those persons who knowingly participate in the planning or execution of the crime are principals. State v. Pierre, supra. Further, the state must prove that defendant's participation was sufficient to convict him as a principal. Knowledge that a crime will be, or has been committed, is insufficient by itself.
In this case, witnesses established that Tolliver and Jeremy were friends. It is undisputed that Jeremy committed the armed robbery. At around 10:30 p.m. on the night of October 22, 2000, Tolliver left his girlfriend's home, driving her blue Chevrolet. At around 11:00 to 11:30 p.m., Tolliver was seen at the Wilson residence visiting Jeremy. Tolliver was driving the blue Chevrolet, and he and Jeremy left the Wilson residence. Less than one hour later, still driving the blue Chevrolet, Tolliver pulled up to the Palms Motel. Shortly after Tolliver entered the office of the motel, Jeremy entered the motel wearing a mask and carrying a gun.
At trial, the motel clerk testified that Tolliver gave no notice nor showed any fear of the masked gunman walking in front of him. Likewise, the masked gunman never spoke to or pointed his gun at Tolliver, nor did the gunman ever attempt to rob Tolliver. It is also noteworthy that while Tolliver was with his friend less than an hour earlier, he claims that he did not recognize Jeremy as the gunman, nor did he recognize Jeremy's voice or clothing. Instead, Tolliver only gave the police a vague description of the gunman. Several witnesses then testified that later that day, Tolliver admitted to them that he and Jeremy planned the robbery, but something went wrong.
*316 In reviewing the evidence in a light most favorable to the prosecution, the jury could reasonably infer from the above facts that Tolliver planned the robbery with Jeremy and assisted in its execution. Likewise, the jury could credit the testimony of Raymond Wilson, Sonya Burton Wilson, Lawrence Burrell, and Tonya Burton regarding Tolliver's admissions of his involvement in the crime.
Whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact; such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (La.1990); State v. Tate, 543 So.2d 1093 (La.App. 2d Cir.), writ denied, 551 So.2d 629 (La.1989); State v. Smith, 445 So.2d 521 (La.App. 3d Cir.), writ denied, 449 So.2d 1346 (La.1984). See also State v. Jones, 601 So.2d 339 (La.App. 2d Cir.), writ denied, 605 So.2d 1129 (La.1992).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Bacon, 578 So.2d 175 (La.App. 1st Cir.1991), writ denied, 93-0694 (La.3/30/95), 651 So.2d 857; State v. Richardson, 459 So.2d 31 (La.App. 1st Cir. 1984).
To the extent that inconsistent or conflicting testimony was given by the Burton family members covering certain details of the defendant's actions, the jury could view those inconsistent statements as not relevant to impact the strength of their consistent testimony of Tolliver's admissions of the crime. The jury observed the demeanor of all the witnesses, and it was clearly in the best position to weigh their testimony and evaluate their credibility. Therefore, this assignment of error is without merit.

Excessive Sentence
In two other assignments of error, Tolliver asserts that his 25-year sentence is excessive. The record reflects that after sentencing, Tolliver filed a motion to reconsider the sentence, alleging that the sentence was constitutionally excessive. The trial court denied the motion. On appeal, Tolliver argues that the sentence is excessive, because he is only 22-years-old, with three small children, and has no significant history of violent criminal activity.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and *317 the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. The record adequately indicates that the trial court was aware of the matters urged by the defense prior to imposing sentence. The record shows the court thoroughly reviewed the defendant's family and criminal history, together with all aggravating and mitigating factors.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345. La. R.S. 14:64(B) provides that whoever commits the offense of armed robbery shall be imprisoned at hard labor for not less than 10 years and not more than 99 years, without the benefit of parole, probation or suspension of sentence.
In this case, the sentence imposed is in the lower range of sentencing exposure. Tolliver was a principal to a serious, dangerous offense which involved the discharge of a deadly weapon that could have resulted in the deaths of the motel clerk and/or the police officers responding to the crime. It did result in the death of the 17-year-old gunman. The court considered defendant's personal history, his prior criminal record, the seriousness of the offense and the likelihood of rehabilitation. The sentencing transcript shows that the trial court took into account Jeremy's family's request that Tolliver be given leniency. Likewise, there is no mitigation which has not already been considered by the trial court. The sentence does not shock our sense of justice.
This assignment is likewise without merit.

Decree
For the foregoing reasons, Aaron Tolliver, Jr.'s conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The record contains many different spellings of this person's name.