828 So.2d 622 (2002)
STATE of Louisiana, Appellee
v.
John Dale ALLEN, Appellant.
No. 36,180-KA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
Rehearing Denied October 17, 2002.
*624 J. Wilson Rambo, Louisiana Appellate Project, Monroe, for Appellant.
Richard Ieyoub, Attorney General, for Appellee.
William R. Jones, District Attorney, B. Kevin Holland, Assistant District Attorney.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
Following a jury trial, the defendant, John Dale Allen, was convicted of armed robbery. Initially he was sentenced to the maximum sentence of 99 years at hard labor without benefit of parole, probation or suspension of sentence. Subsequently, the defendant was adjudicated a habitual offender and received a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. He appeals. For the reasons set forth below, the defendant's conviction, adjudication as a habitual offender, and sentence are affirmed.

FACTS
In the early morning hours of July 5, 1999, the night clerk at the Kwik Pantry in Coushatta, Louisiana, was robbed by a masked man armed with a knife. When the robber entered the store, he jumped the counter, placed the knife to the clerk's throat, and demanded money. The clerk surrendered the money to him; it was later estimated to be between $800 and $900. Before fleeing, the robber ordered the clerk to lie on the floor and threatened to kill her if he saw her get up.
Law enforcement officers quickly developed 13-year-old C. S. as a suspect in the Kwik Pantry armed robbery. C. S. admitted to the police that he had committed the offense at the instigation of his cousin, the defendant. According to C. S., the defendant planned the robbery and recruited him to carry it out. The defendant outfitted him with the knife, mask, shirt, and some socks used in the robbery, producing most of the items from a duffel bag. En *625 route to the Kwik Pantry, the defendant and C. S. stopped behind a motel where the defendant gave C. S. some powder to put on his face to make him look like "a white guy." Immediately prior to the robbery, the defendant gave the teenager the following instructions: "I want you to go up in there and jump over the counter and grab her and tell her to give you the money. And if she make any attempt to fight back, kill her."
After C. S. robbed the store, he ran back across the street to some bushes where the defendant was waiting for him. Then they both ran to a nearby church. The defendant counted the money. (However, unbeknownst to the defendant, C. S. had only given him part of the robbery proceeds.) C. S. returned the knife, shirt, socks and mask to the defendant. When the defendant asked C. S. if he killed the clerk, the boy lied and said yes. The defendant replied, "[G]ood job."
C. S. was picked up by police after a cousin mentioned to them that C. S. was spending a large amount of cash. After C. S. gave his statement to the police, officers went to the location he mentioned near the motel. There they corroborated part of C. S.'s statement, finding several items including a plastic bag containing white powder. Thereafter, a search warrant was secured for two adjoining houses on Abney Street: 1908 Abney, the home of an Allen cousin, and 1824 Abney, the home of John A. Allen, the defendant's uncle; the police had information that the defendant sometimes resided at both residences. In fact, the defendant was present when the police executed the search warrant at 1824 Abney. Upon seeing the officers enter the house, he immediately fled down a hallway to a nearby bedroom. Before being subdued, the defendant tried to reach under a bed; an officer later discovered a pellet rifle under the bed. The defendant was placed under arrest. During the search of 1824 Abney, a duffle bag was found between 30 to 60 feet from the house in the backyard in some bushes. Inside the duffle bag were the mask and shirt used in the armed robbery. However, the knife described by the store clerk was never recovered.
The defendant was charged with armed robbery. At trial, the store clerk testified that she could not identify the robber because he wore a mask. However, upon the state's presentation of a mask and a shirt, she identified the items as those worn by the person who robbed the Kwik Pantry. Law enforcement officers testified that these items were recovered from the duffel bag found behind the defendant's residence. C. S.who had pled guilty to the armed robbery and been sentenced to incarceration until his 17th birthdaytestified about his own participation in the armed robbery, as well as the defendant's role in masterminding the offense. The defense presented the testimony of John A. Allen, who is the defendant's uncle and C. S.'s great-uncle. He stated that the defendant did not live at his house. Rather, he testified, C. S. spent more time at his residence than the defendant. However, he admitted that the defendant came there often.
The defendant was convicted as charged and sentenced to the maximum penalty of 99 years at hard labor without benefit of parole, probation or suspension of sentence. The state filed a habitual offender bill, setting forth four prior felony convictions of the defendant: May 1984 forgery convictions (nine counts); October 1984 forgery convictions (four counts); 1992 first degree robbery conviction; and 1992 simple escape conviction. Subsequently, the state filed an amended bill which also listed a 1988 aggravated battery conviction. At a hearing in December *626 2000, the defendant was adjudicated a habitual offender. The trial court vacated the previous 99-year sentence and imposed a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
In December 2001, the appellant filed an out-of-time motion to reconsider sentence; it was denied. At the same time, he also failed a motion for an out-of-time appeal which was granted. He asserted five assignments of error. Two assignments were not argued or briefed; consequently, they are deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La.1990); State v. Toney, 26,711 (La.App.2d Cir.3/1/95), 651 So.2d 387.

SUFFICIENCY OF EVIDENCE
The defendant argues that there was insufficient evidence to support his conviction as a principal to armed robbery. In particular, he contends that the state's case was based solely upon circumstantial evidence and the inconsistent testimony of young C. S.

Law
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992); La.C.Cr.P. art. 821.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La.Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Bacon, 578 So.2d 175 (La.App. 1st Cir.1991), writ denied, 93-0694 (La.3/30/95), 651 So.2d 857; State v. Tolliver, 35,930 (La.App.2d Cir.5/8/02), 818 So.2d 310.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its *627 commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Pierre, supra.
The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. La. R.S. 14:24; State v. Smith, 513 So.2d 438 (La.App. 2d Cir.1987). Under this theory, the defendant need not actually take anything to be found guilty of the crime. Also, a defendant convicted as a principal need not have personally held a weapon to be guilty of armed robbery. State v. Dominick, 354 So.2d 1316 (La. 1978); State v. Tolliver, supra. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981); State v. Tolliver, supra.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Demease, 33,047 (La.App.2d Cir.4/5/00), 756 So.2d 1264, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 750. Though intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982); State v. Demease, supra.

Discussion
The defendant maintains that the evidence did not demonstrate that he was involved in the commission of the Kwik Pantry robbery or that he even really knew his alleged accomplice, C. S.
In support of his argument, the defendant asserts that C. S.'s testimony, the only evidence to tie the defendant directly to the robbery, was inconsistent. However, many of the alleged inconsistencies pertain to irrelevant matters such as the brand of shoes C. S. was wearing on the night of the offense. The defendant also points to C. S.'s statement that he gave the money stolen in the robbery to the defendant but yet he had money to spend the following day. In making this argument, the defense ignores C. S.'s testimony that he did not give the defendant all of the robbery proceeds. Instead, while running from the crime scene, C. S. concealed a blue bank bag of money in his "drawers." As a result, the defendant received between $100 and $200 while C. S. kept $650.
The defendant also argues that the testimony of his uncle, John A. Allen, established that the defendant did not live at 1824 Abney and that the state failed to rebut this testimony. While John A. Allen testified that the defendant did not reside at his house, he also stated that the defendant was there "[p]ractically every day" and that he sometimes slept there too. The state presented the testimony of a police officer who had given the defendant a ride home the week before executing the search warrant at John A. Allen's house. The officer testified that the defendant told him that he was staying at his uncle's house.
The testimony of C. S. established that the defendant planned the robbery. C. *628 S.'s statement that the defendant sought him out shortly before the robbery was corroborated by C. S.'s friend, Ronald Grant. According to Grant, he and C. S. had been playing basketball and shooting off firecrackers before the defendant found them. Grant's testimony placed the defendant and C. S. walking off together shortly before the robbery. C. S.'s statement to the police led to the recovery of items related to the robbery in the places he specified. The powder that the defendant told C. S. to wear was located near the motel. The mask and shirt were found in a duffel bag like the one C. S. described as belonging to the defendant. The duffel bag itself was discovered near a house frequented by the defendant on a daily basis. When first questioned, C. S. immediately acknowledged his own participation in the robbery. He also promptly identified the defendant as a principal to the crime and never wavered in his accusationsnot even under vigorous cross-examination at trial. It is also noteworthy that when the police executed the search warrant at his uncle's residence, the defendant reacted by attempting to flee from the officers and arm himself.
After reviewing the evidence in the light most favorable to the prosecution, we find the jury could have reasonably concluded that the defendant planned the robbery and used C. S. in its execution. Whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact; such factual determinations will not be disturbed on review unless clearly contrary to the evidence.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. The jury observed the demeanor of all the witnesses, and it was clearly in the best position to weigh their testimony and evaluate their credibility. The totality of the evidence shows that the defendant was a principal in the armed robbery of the Kwik Pantry. The state sustained its burden to prove all the necessary elements. Furthermore, the state introduced evidence which negated any possibility of misidentification. The jury logically concluded that C. S. and Grant were truthful in their testimony that C. S. was simply enjoying the Fourth of July holiday, shooting firecrackers and playing basketball, until the defendant approached and turned C. S.'s attention toward committing this crime. Any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Inasmuch as there was sufficient evidence to support the jury's finding that the appellant was a principal in the armed robbery, this assignment is without merit.

HABITUAL OFFENDER ADJUDICATION
The defendant contends that there was insufficient evidence to support his adjudication as a habitual offender. Specifically he asserts that the record did not contain court minutes or transcripts that affirmatively show that the defendant was sufficiently advised of the required rights and that he knowingly and intelligently waived them at the time of his previous plea of guilty.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the scheme for assigning the burden of proof in a habitual offender proceeding was discussed:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence *629 showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. [Footnotes omitted].
The exhibits supporting the defendant's habitual offender status are:
(1) Certified bill of information and minutes in # 29,599, Winn Parish, proving that John Dale Allen pled guilty to nine counts of forgery on May 15, 1984, and was sentenced to serve a total of nine years at hard labor; sentence was suspended and five years of supervised probation ordered. The minutes reflect the defendant was represented by counsel, and advised of his right to remain silent, right to trial, and "all rights pertaining to such trial," and that by pleading guilty he waived those rights. The judge found the defendant entered his plea freely and voluntarily. A certified minute entry further shows that his probation was revoked February 11, 1985.
(2) Certified copy of bill of information and minutes in # 30,109, Winn Parish, proving that John Dale Allen pled guilty to four counts of forgery on October 16, 1984, and was sentenced to serve three years at hard labor on each count, with the sentences to run concurrently. The minutes further show that he was represented by counsel.
(3) Certified copy of bill of information and minutes in # 15,952, Claiborne Parish, proving that John Dale Allen pled guilty to aggravated battery (on another inmate) on February 16, 1988, and was sentenced to serve one year at hard labor to run consecutively with any other sentence being served. The minutes show the defendant, who was represented by counsel, was informed of his constitutional rights, and the court found the plea to be "free, voluntary and intelligently made." The state also introduced a certified copy of the "Determination of Understanding of Constitutional Rights, Nature of Charge and Consequences of Guilty Plea" as part of the evidence of this conviction. [Testimonial evidence demonstrates that he received good time release on September 24, 1991.]
4) Certified copy of bill of information and minutes in # 74,317 and 74,886, Red River Parish, proving that John Dale Allen pled guilty to simple escape and first degree robbery on May 14, 1992, and was sentenced on the first degree robbery to serve five years at hard labor without benefits to run concurrently with his forgery convictions in # 30,109, and three years on the simple escape, to run consecutively. The minutes contain a transcript of the plea, which shows the defendant was before the court *630 with counsel, and was advised of his right to a jury trial, his right to confront the witnesses, and his right against self-incrimination. [Testimonial evidence shows he was released on parole on June 17, 1996; absconded from supervision on December 27, 1996; was revoked on May 14, 1997; released on parole again on December 26, 1998. Following his arrest on July 8, 1999, on the instant charge of armed robbery, a parole violation detainer was placed on him.]
In addition to the documentary evidence, the state presented the testimony of three probation and parole officers who supervised the defendant. All of them identified the defendant in court as the person they supervised on the various convictions. Two of the officers also testified as to several revocations of the defendant's parole and/or probation.
The provisions of La. R.S. 15:529.1(A)(1)(b)(ii) stated:
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.[1]
Under La. R.S. 14:2(13), armed robbery is a crime of violence.
The state presented certified documentary evidence of the defendant's previous felonies. The evidence showed that the defendant was represented by counsel at each of the proceedings. The minutes further reflect that he was advised of his rights at the taking of the prior pleas. The cleansing period had not tolled on any of the prior felonies, as was evident on the face of the record. The defendant was properly identified as the same person convicted of the prior crimes, through the testimony of his former probation and parole officers. His most recent offense, armed robbery, was a crime of violence. Consequently, we find that the trial court correctly adjudicated the defendant to be a third-felony offender under La. R.S. 15:529.1.
This assignment of error is without merit.

EXCESSIVE SENTENCE
The defendant argues that the sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence imposed by the trial court is excessive. We note that the sentence was the mandatory minimum sentence established by the habitual offender statute for a third-felony offender such as the defendant.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La.C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 553. Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, supra.
*631 Although the supreme court stated in State v. Dorthey, 623 So.2d 1276 (La.1993), that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Sewell, 35,549 (La.App.2d Cir.2/27/02), 811 So.2d 140.
In Johnson, supra, the supreme court also held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, a defendant must clearly and convincingly show that he is exceptional, which, in this context, means that, because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. State v. Johnson, supra; State v. Sewell, supra.
A review of the recordparticularly the 36-year-old defendant's voluminous criminal historysupports the imposition of the sentence of life imprisonment. The defendant's background consisted of a long list of criminal behavior, most notably forgeries. A prior robbery even involved the same store robbed in the present offense. Review of his criminal record reveals that since 1985 he has been incarcerated for substantial periods of time and that he was released from jail only about six months before the instant robbery. Additionally, in this robbery, the adult defendant exploited the delinquency of a young relative; he even encouraged the boy to kill the store clerk if necessary to facilitate the crime. During sentencing, the trial judge stated that the defendant was a menace to society and posed a threat to others. In view of the defendant's criminal record, the culpability of the offender, the gravity of the offense, and the circumstances of the case, the mandatory life sentence for this career criminal is clearly appropriate. From this record, it cannot be said that the defendant's mandated sentence is excessive.
This assignment of error lacks merit.

CONCLUSION
The defendant's conviction, adjudication as a habitual offender, and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, C.J., WILLIAMS, STEWART, GASKINS, and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Acts 2001, No. 403, § 2, eff. June 15, 2001, amended La. R.S. 15:529.1(A)(1)(b)(ii); however, the amendment had only prospective effect and is not applicable to this case.