# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-666

**STATE OF LOUISIANA**

**VERSUS**

**KEITH JOSEPH JOHNSON**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 5367-23
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**********

### CHARLES G. FITZGERALD
### JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Charles G. Fitzgerald, Judges.

**AFFIRMED.**

**Remy Voisin Starns**
**State Public Defender**
**Louisiana Appeals and Writ Service**
**301 Main Street, Suite 700**
**Baton Rouge, Louisiana 70825**
**(225) 219-9305**
**Counsel for Defendant/Appellant:**
  **Keith Joseph Johnson**

**Waukeshia Jackson**
**Louisiana Appeals and Writ Service**
**804 Main Street**
**Baton Rouge, Louisiana 70802**
**(833) 453-3243**
**Counsel for Defendant/Appellant:**
  **Keith Joseph Johnson**

**Stephen C. Dwight**
**District Attorney**
**David S. Pipes**
**Assistant District Attorney**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**Counsel for Appellee:**
  **State of Louisiana**

**FITZGERALD, Judge.**

This is the case of the skateboard, robbery, and habitual offender, all in that order.

In March 2023, Defendant, Keith Joseph Johnson, was charged with simple robbery under La.R.S. 14:65. In April 2024, a unanimous jury found Defendant guilty as charged. The State then filed a habitual offender bill of information. And in February 2025, the trial court found that Defendant was a third offender and sentenced him to ten years at hard labor with credit for time served.

Defendant now appeals his conviction for simple robbery, asserting three assignments of error:

> I.      The evidence was legally insufficient to support the conviction for simple robbery because the State failed to prove that the skateboard was taken from the person or immediate control of the victim and failed to prove that force or intimidation was used to accomplish the taking as required pursuant to La. R.S. 14.65 and *Jackson v. Virginia*[, 443 U.S. 307, 99 S.Ct. 2781 (1979)].

> II.      The trial court erred in denying the defense's motion for mistrial after the prosecution repeatedly misstated the law during voir dire by presenting a hypothetical involving a taking in a bank which is conduct suggestive of burglary and theft, while characterizing the conduct as robbery, thereby misleading the jury as to the essential element of force or intimidation and irreparably tainting the jury's understanding of the charged offense.

> III.      The trial court committed reversible error by allowing speculative lay testimony, hearsay medical diagnosis, and jail call statements to establish that the alleged victim was autistic or "special needs" in the absence of any medical records or expert testimony, thereby unduly prejudicing the jury and denying the Defendant a fair trial.

## LAW AND ANALYSIS

All criminal appeals are initially reviewed for errors patent on the face of the record. La.Code Crim.P. art. 920. Here, we find no such errors.

**First Assignment of Error**

In his first assignment, Defendant contests the sufficiency of the evidence to sustain his conviction for simple robbery.

A sufficiency-of-the-evidence challenge is reviewed on appeal under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521.

Under this standard, the appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442. The reviewing court must instead afford great deference to a jury's decision to accept or reject the testimony. *State v. Allen*, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So.2d 566, and 02-2997 (La. 6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404 (2004). "Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency." *Id.* at 626.

### *Summary of the Record Evidence*

The State's first witness at trial was Alehondra Meldarejo. She testified that on February 6, 2023, her husband informed her that two individuals were fighting in front of their home and that one appeared to be striking the other with a skateboard. Alehondra called 911. The altercation was captured on her home's surveillance

2

cameras, so she downloaded, reviewed, and submitted the video recording to the police. The recording was admitted into evidence. It shows Defendant hitting the victim, Deiontre Carter, several times with a skateboard. Alehondra also testified that she saw Defendant strike Deiontre multiple times with the skateboard.

The State's next witness was Officer Cody Wolfe of the Lake Charles Police Department. Officer Wolfe testified that on February 6, 2023, he responded to an incident involving two men. When he arrived at the scene, he saw Defendant and Deiontre aggressively tugging on a skateboard. He ordered them to stop and to drop the skateboard. Defendant and Deiontre were then detained and separated. At this point, Officer Wolfe noticed abrasions on Deiontre's arms and blood on the side of his face. According to the officer, Deiontre claimed that he sustained those injuries when Defendant hit him multiple times with the skateboard. Officer Wolfe further testified as follows:

BY [THE STATE]:

    Q.    What, if anything, did he [Deiontre] tell you?

    A.    He said that he was riding his skateboard on the sidewalk on a few streets north of that. He encountered [Defendant] who demanded his skateboard. He obviously did not want to give the skateboard up. He said that [Defendant] pushed him off the skateboard, took it, and then basically a physical fight ensued for [Deiontre] attempting to get his skateboard back.

    Q.    Did you ultimately -- after that, after hearing this information, did you ultimately request that another officer remove the handcuffs from Deiontre?

    A.    Yes. Once other officers got there, and the aggression subsided, I asked them to remove the handcuffs.

    Q.    And why did you ask them specifically to remove the handcuffs from Deiontre?

    A.    I believed that he was a victim that was trying to get his skateboard back.

3

. . . .

Q. After conducting some investigation at the scene, did you have an idea who was responsible for causing the incident?

A. Yes, sir. It was [Defendant].

Q. Did you have an opportunity to speak to [Defendant]?

A. I did.

Q. What injuries, if any, did you observe on the defendant?

A. I didn't observe any injuries.

. . . .

Q. What, if anything, did the defendant tell you about the incident?

A. He was kind of all over the place. He said that [Deiontre] had stabbed his mom, or attempted to stab his mom before the fight ensued. He also said that [Deiontre] was trying to have oral sex with him. He was all over the place. There wasn't like a reason that this ensued.

Officer Wolfe then arrested Defendant for simple robbery. He explained to the jury that he arrested Defendant on that charge because Defendant "battered the victim to obtain the skateboard. He didn't take the skateboard and run or nothing. He actually used the skateboard as a weapon against [Deiontre and] pushed him down." Officer Wolfe clarified that he did not see Defendant hit Deiontre at any point with the skateboard.

Tammy Simien testified next. She is Deiontre's grandmother. She testified that Deiontre is autistic. He was diagnosed when he was three years old, and she has been his primary caregiver since that time.

According to Ms. Simien, she went to the scene immediately after the police contacted her on February 6, 2023. Upon her arrival, she noticed that Deiontre had

4

a cut behind his ear and scratches on his hands. Deiontre explained that Defendant hit him several times with the skateboard.

The State's next witness was Lieutenant Roy Malone, a records custodian with the Calcasieu Parish Sheriff's Department. Lieutenant Malone testified that he was asked to download the recorded jail calls made by Defendant. The recordings included a call between Defendant and his mother, during which Defendant said that Deiontre initiated the assault and that he (Defendant) grabbed the skateboard after Deiontre fell to the ground.

Deiontre was the State's final witness. Here is his testimony:

> Q. And you know why we are here, so if you could, could you just tell the jury in your own words, when you were skateboarding that day, what happened.
>
> A. I was right by the sidewalks of our street, I believe on the right side, and then [Defendant], he was walking towards me. He had some kind of hair razor looking thing. I don't know what it was, but it looked like it was for hair or something, and it was blue and white. And he was, like, shouting things at me that I couldn't exactly understand. I was trying to be polite and asked him to keep going on, but then he just kept getting closer and closer, and then threw it at me, but at that moment, I ducked my head, and then he started, like, attacking, trying to grab my skateboard and hit me with it. One lady who actually saw it, I think the first witness, was some lady in a car that was driving by. She tried telling him to stop, but he didn't exactly listen. And then when he tried swinging the skateboard, like, at me, I had my leg up kicking him in the face to get back up. And then he tried stealing the skateboard, so I tried to follow him and get it back, because I wasn't going to just let him steal from me. And it's happened more than once, actually. And then when I followed him to try and get it back, we encountered some construction workers who also seemed to have witnessed it. And when I tried asking for it back, he was trying to swing it at me the more I would try and get it back. And [the] first time he did it, I believe he bruised my left fingers, and then the second time, he like swung it directly at my face, impacting my left ear, and I still have a scar where it happened. It seems to -- it is not as bloody as it was that day, since it is healing up, but that was where it impacted. And then the situation occurred in front of his family's house where some of them have seen it, and a few neighbors across the street, who have also recognized me from skateboarding occasions have called the cops to

help.  And that was where they captured him and tried asking about what happened.  And my ear was bleeding pretty bad.

### *Sufficiency of the Evidence—Simple Robbery*

In Louisiana, simple robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation but not armed with a dangerous weapon." La.R.S. 14:65.  As explained by the supreme court in *State v. Thomas*, 447 So.2d 1053, 1055 (La.1984), "The property taken in a robbery must be sufficiently under the victim's control that, absent violence or intimidation, the victim could have prevented the taking."

Defendant here asserts two arguments in support of his sufficiency-of-the-evidence challenge.  First, Defendant argues that the State did not prove that he took the skateboard from Deiontre's person or his immediate control.  He contends that the skateboard was on the ground when he took it.

And second, Defendant argues that the State failed to prove that he used force or intimidation to take the skateboard.  He contends that the mutual, physical altercation with Deiontre happened after he had taken the skateboard.  And this, Defendant suggests, does not satisfy the force-or-intimidation element required by La.R.S. 14:65.

By contrast, the State argues that all elements of simple robbery were proven beyond a reasonable doubt.  For starters, the State points to Deiontre's testimony: Deiontre testified that he was riding his skateboard in his neighborhood, that Defendant threw an object at him, that Defendant took his skateboard, and that Defendant repeatedly struck him with the skateboard when he attempted to regain

possession of it. Thus, the State contends that because Deiontre was riding the skateboard at the time of the attack, it was in his immediate control.

The State then argues that Defendant used force to accomplish the taking. Again, Deiontre testified that Defendant repeatedly struck him after taking his skateboard to prevent him from regaining possession of it. And according to *State v. Goodley*, 01-77, p. 9 (La. 6/21/02), 820 So.2d 478, 484 (quoting La.R.S. 14:65), "It is immaterial whether the 'taking of anything of value' occurs immediately before or after the 'use of force or intimidation.'"

Similar arguments to those being made by Defendant were addressed in *State v. Roberson*, 06-1568, (La.App. 3 Cir. 5/2/07), 956 So.2d 736, *writ denied*, 07-1243 (La. 12/14/07), 970 So.2d 531. In that case, the defendant was convicted of simple robbery after she entered a store, placed some deodorant in her bag, and then left the store without paying for the deodorant. The store's employees attempted to stop the defendant, but she threatened them and pulled out a boxcutter. On appeal, the defendant argued that the deodorant was not taken from the immediate control of the store employees and that no force or intimidation was used during the taking. In rejecting these arguments, this court explained as follows:

> In *State v. Clay*, 576 So.2d 1099 (La.App. 3 Cir.), *writ denied*, 580 So.2d 669 (La.1991), the defendant was found guilty of attempted armed robbery. The defendant entered Delchamps grocery store where an employee observed the defendant remove the contents of a carton of cigarettes and conceal them in his pants and socks. The defendant went to the checkout counter in the front of the store and then proceeded to the back of the store, where he was stopped by store employees. At that time, the defendant removed four to six packs of cigarettes from his clothing. The employees then walked the defendant toward a waiting area at the rear of the store. However, the defendant ran toward the front of the store, but was unable to exit because the checkout aisles were blocked. The defendant proceeded to run to the rear of the store where he was cornered by store employees. At that time, the defendant pulled out a gun. The store employees then let the defendant go, and he left the store with the remaining cigarettes.

7

On appeal, the defendant in *Clay* argued the state failed to prove that anything of value was taken and that the cigarettes were in the immediate control of the store employee. In upholding the defendant's conviction, this court stated the following:

> The thing of value was taken by the defendant from the store, which as the state contends, was under the immediate supervision and jurisdiction of the employees involved in this incident. Although at the time of the original concealing of the items in his socks and pants, the defendant did not use force or intimidation, he did use a gun in order to perfect the taking; he used a gun to accomplish the taking and escape from the premises when cornered by the store employees.

*Id*. at 1102.

Based on the language in *Clay*, we find the deodorant was in the immediate control of Roy and Fuller, as they were employees of Eckerd. We will now determine whether any force or intimidation was used by the Defendant when the taking occurred.

In support of her argument, the Defendant cites *State v. Meyers*, 620 So.2d 1160 (La.1993). In *Meyers*, the supreme court held that use of force to retain a stolen item supports a conviction for first degree robbery. The court noted the danger to the victim was identical whether the force or intimidation was employed against the victim immediately before or immediately after the actual taking.

Roy, the store manager, testified that she asked the Defendant to take the deodorant out of the bag as the Defendant exited the store and the Defendant refused. Roy then tried to tear the bag open, and the Defendant pushed her in the stomach and left the store. Once outside, the Defendant told Roy and the other employee, Fuller, "You bitches better stop f_ _ _ing with me." Fuller testified that the Defendant was mad and angry at that time. Roy also testified that the Defendant was angry, talking loud, and became aggressive when Roy attempted to take the deodorant out of the bag.

The Defendant pushed Roy and used threatening language in an attempt to retain the deodorant. Based on *Meyers*, we find the Defendant's actions were sufficient to support the use of force or intimidation element of simple robbery.

The Defendant points out that Corporal Beebe testified that Roy and Fuller did not mention a weapon, being threatened, fearing for their lives, or any concern other than a theft. However, we find the verdict clearly demonstrates the jury chose to believe the testimony of Roy and Fuller. That credibility determination should not be second guessed by

this court. *State v. Thompson*, 06-474 (La.App. 3 Cir. 11/8/06), 943 So.2d 621 (citing *State v. Anderson*, 03-1601 (La.App. 3 Cir. 5/12/04), 872 So.2d 1251). Therefore, we find the State proved beyond a reasonable doubt that the Defendant took deodorant that was in the immediate control of Roy and Fuller by use of force or intimidation. Accordingly, this assignment of error lacks merit.

*Roberson*, 956 So.2d at 739–40.

Like *Roberson*, the jury here chose to believe the State's witnesses, including Deiontre. As stated earlier, Deiontre testified that he was riding his skateboard in his neighborhood, that Defendant threw an object at him, that Defendant took his skateboard, and that Defendant repeatedly struck him with the skateboard when he attempted to regain possession of it. It was therefore reasonable for the jury to conclude that Defendant used force to take the skateboard from Deiontre and then used force to maintain possession of it. And even if the skateboard had been on the ground when the taking occurred, it would have been reasonable for the jury to conclude that the skateboard was within Deiontre's immediate control.

To sum up, when viewing the evidence in the light most favorable to the prosecution, a rational juror could have found that the State proved beyond a reasonable doubt that Defendant was guilty of simple robbery. Defendant's first assignment is without merit.

**Second Assignment of Error**

In his second assignment, Defendant asserts that the trial court erred in denying his motion for mistrial.

In relevant part, La.Code Crim.P. art. 775 states that "[a] mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." As

9

explained in *State v. Carmouche*, 01-405, p. 20 (La. 5/14/02), 872 So.2d 1020, 1035, "The 'prejudicial conduct' may include remarks of veniremen during voir dire."

However, "a mistrial is a drastic remedy, and except in instances in which the mistrial is mandatory, is warranted only when a trial court error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial." *State v. Harris*, 00-3459, p. 9 (La. 2/26/02), 812 So.2d 612, 617. "A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion." *State v. Ortiz*, 96-1609, p. 10 (La. 10/21/97), 701 So.2d 922, 929, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352 (1998).

Here, Defendant's motion for mistrial focused on the State's misstatements of the law during voir dire. Specifically, the State presented the following hypothetical to distinguish between direct and circumstantial evidence:

[THE STATE]:

So let's say, for whatever reason, one day, Mr. Guidry decides he is going to break bad, and he comes up with this elaborate scheme. He is going to rob the Chase Bank right there on Lakeshore. So Mr. Guidry goes in, in the dead of night -- nobody is at the Chase Bank -- walks straight into the vault, grabs some money, starts putting it into the bag. He takes the bag, walks out of the bank, goes on his merry way. Unfortunately for Mr. Guidry, he didn't know that there were surveillance cameras in the vault. Caught the entire thing. You can clearly see Mr. Guidry in the vault taking the money, putting it in the bag.

Thereafter, the State changed the hypothetical and referred to the offense as a robbery, stating: "Mr. Guidry goes into Chase Bank with this elaborate scheme to rob the bank. He walks into the vault in the dead of night, takes the money, and leaves." The State then asked a prospective juror whether she would be able to "find Mr. Guidry guilty of robbing that bank."

At this point, defense counsel objected:

BY [DEFENSE COUNSEL]:

Your Honor, I let it ride a while . . . and I was tempted to just raise it with the jury that [the State] had been misstating the law about robbery, which my client is charged with, because he has not described a single crime of violence. And nobody robbed that bank. That was burglary. I could have waited . . . but I chose not to because he kept going on and on.

BY [THE STATE]:

Judge, what it boils down to is -- Judge, I could have raised the example in a way to where it met the elements of an armed robbery or a simple robbery of the bank. I neglected to do so, and I can certainly clarify that with the jurors that, you know, whatever the example is that I am using has to meet the elements of armed robbery, a crime of violence, or simple robbery. I will approach it however you want me to approach it. I can certainly clarify whatever needs to be clarified. But what it boils down to is whether or not they can convict on circumstantial evidence. And that is all I am getting at.

BY [DEFENSE COUNSEL]:

Except, Your Honor, this officer of the court, in using this -- and this is why a lot of times we don't talk about the crime at issue in voir dire -- said the word robbery I don't know how many times in speaking of something that is not a robbery. It is a burglary. He is tainting the jury, and I move for a mistrial.

BY THE COURT:

Well, I don't think it rises to him tainting the jury. I think you can easily clarify that, but I mean, I think you can -- I mean, I will sustain the objection, but I think what you should do, though, is -- It is important when you're using the terms, make sure you're -- I mean you really need to, you need to be more specific. You need to say well I don't know, but in any event, I mean -- we can approach the bench -- What were you asking them?

BY [THE STATE]:

I was asking them whether or not they would be able to convict based on circumstantial evidence alone. And so if I need to, I can change it.

BY THE COURT:

Well, I think what you need to do is just say, look, and explain to them, look, when I was giving you that example, I wasn't actually

11

intending to get into the elements of what a robbery is at this point, or to the, you know -- I was trying to make a point of circumstantial evidence. I think you just need to make that clarification to them that while I was giving you examples, the point was about circumstantial and direct evidence. I mean, I could tell them that. I think it would be better if you just clarify that you were just trying to make a point about distinguishing -- you know, that you weren't actually trying to describe what a robbery is. I don't know how we are going to do that, but, I mean, I think you need to try to clarify that point, because I think, I mean -- or would you prefer that I explain something to them?

BY [DEFENSE COUNSEL]:

Your Honor, I contend that somebody's got to say that what was described is not a robbery.

BY THE COURT:

I mean, I don't mind -- I mean, I can tell them that -- I mean, I can give you a chance to do it, to explain what you are actually doing. I didn't hear anything -- I didn't hear in your explanation anything about -- that would be burglary -- but if you want to make that explanation, I am going to give you a chance without me having to do it.

BY [THE STATE]:

I mean, would it be a simple or easier fix if I say, okay, disregard; Mr. Guidry is no longer -- or he is not on -- he is on trial for burglary. A removal of money from the bank. I mean –

BY [DEFENSE COUNSEL]:

A theft.

BY [THE STATE]:

We are not even going to go technical since we are in mistrial territory. Just removed the money from the bank.

BY [DEFENSE COUNSEL]:

But the problem is we are not lay people. We don't get to make lay people inaccuracies.

BY THE COURT:

Well -- but the problem -- you throw around terms of theft and robbery -- and it wasn't a robbery. We've got to make sure we are using

terms correctly. You are prosecuting somebody for robbery, so you can't be using the wrong terms for something that is not -- You're prosecuting somebody for robbery, you can't be using examples of something like it's a robbery that is not a robbery, is the point. You've got to use an example -- in other words -- So you need to fix that. Say what I was saying was not actually a robbery. You know. Because I was talking about a bank, I guess I used the term robbery. Or whatever, however you want to say it. That was actually a burglary; what I was describing wasn't a robbery.

BY [THE STATE]:

Sure.

BY THE COURT:

However you want to fix that, because you can't be loose with those terms when you are prosecuting someone -- You don't want to confuse the jury because -- I don't think we are at a mistrial, at all, but I still think you need to be more clear with your examples.

BY [DEFENSE COUNSEL]:

I object to the denial of the mistrial.

BY THE COURT:

Objection noted.

The State then apologized to the prospective jurors for the mischaracterization, clarified that the hypothetical involved a burglary—not a robbery, and explained that the elements of a robbery would be discussed later.

Nonetheless, Defendant now argues on appeal that the trial court abused its discretion by denying the motion for mistrial. Defendant contends that because the misstatements of law occurred before any evidence was heard, "the jury's understanding of the charged offense was distorted." Defendant contends that the prosecution encouraged the jury to convict him based on "a legally insufficient theory of guilt." And finally, Defendant contends that the prejudicial conduct was not cured by the trial court's jury instructions.

13

In response, the State argues that the misstatements were immediately corrected, that Defendant's right to a fair trial was not impinged, that the trial court charged the jury on the elements of simple robbery, and that the trial court thus did not abuse its discretion in denying the motion. We agree.

In *State v. Cavazos*, 610 So.2d 127, 128–29 (La.1992), the supreme court explained that "a prosecutor's misstatements of the law during voir dire examination, or in his opening and closing remarks, do not require reversal of a defendant's conviction if the court properly charges the jury at the close of the case."

Like *Cavazos*, 610 So.2d 127, the trial court here properly charged the jury at the close of the case. Hence, the trial court did not abuse its discretion in denying Defendant's motion for mistrial. Defendant's second assignment is without merit.

**Third Assignment of Error**

In his final assignment, Defendant asserts that the trial court erred "by allowing speculative lay testimony, hearsay medical diagnosis, and jail call statements to establish that the alleged victim was autistic or 'special needs' in the absence of any medical records or expert testimony, thereby unduly prejudicing the jury and denying the Defendant a fair trial."

This assignment is deficient for two reasons. First, Defendant's appeal brief does not reference the specific page numbers of the record, making it impossible for us to determine what "speculative lay testimony" is being complained about. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4(A)(9)(a).

And second, the testimony and "jail call statements" about Deiontre's medical condition was never objected to by Defendant at trial. Louisiana Code of Criminal Procedure Article 841 states in relevant part:

A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

In addition, La.Code Evid. art. 103 provides that an error may not be predicated on a ruling which admits or excludes evidence unless "a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground for objection[.]"

The contemporaneous objection rule was addressed in *State v. Ruiz*, 06-1755 (La. 4/11/07), 955 So.2d 81. There, the supreme court explained:

Louisiana's contemporaneous objection rule provides "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim. Pro. art. 841 A; *State v. Knott*, 05-2252, p. 2 (La. 5/5/06), 928 So.2d 534, 535. The contemporaneous objection rule has two purposes: (1) to require counsel to call an error to the judge's attention at a time when the judge may correct the error; and (2) to prevent defense counsel from "sitting on" an error and gambling unsuccessfully on the verdict, and later resorting to appeal on an error that might have been corrected at trial. *Knott*, 05-2252 p. 2, 928 So.2d at 535; *State v. Arvie*, 505 So.2d 44, 47 (La.1987).

*Id*. at 87.

Although a contemporaneous objection must generally be made immediately, there are instances when objections made shortly thereafter will be considered timely. *State v. Williams*, 03-1773 (La.App. 3 Cir. 6/2/04), 878 So.2d 765. But here, Defendant never objected to the testimony or "jail call statements" about Deiontre's medical condition.

In sum, Defendant's third assignment of error is not properly before this court.

## DISPOSITION

Defendant's conviction for simple robbery is affirmed.

**AFFIRMED.**